## No. 27551

**Maria Angeles Elizondo v. State of Colorado, Department of Revenue, Motor Vehicle Division**

(570 P.2d 518)

Decided September 26, 1977.

Woodrow, Roushar, Weaver & Withers, Victor T. Roushar, for plaintiff-appellee.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Arthur G. Staliwe, Special Assistant, for defendants-appellants.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

Maria Elizondo, the plaintiff-appellee, accumulated thirteen points against her driver's license over a period of about eight months. *See* section 42-2-123(5), C.R.S. 1973. After a hearing at which her driving record was reviewed, a hearing officer of the appellant, Colorado Department of Revenue, Motor Vehicle Division (Department), suspended her license for three and one-half months.

Elizondo, asserting that her business and personal circumstances required that she drive, requested a probationary license for the period of suspension. *See* section 42-2-123(11), C.R.S. 1973. The hearing officer denied the request, and Elizondo then exercised her right of appeal to the district court. Section 42-2-127, C.R.S. 1973.

The district court held that section 42-2-123(11), the statute providing for probationary licenses, had unconstitutionally delegated legislative power. Further that court held that the portion of the statute dealing with

driver's license suspension was not severable from the invalid portion. Accordingly the district court reversed the hearing officer's suspension order, and reinstated Elizondo's driver's license. While we agree that there are constitutional infirmities in the probationary licensing procedure, we reverse as to the remedy granted.

I.

A. *Non-Delegation Doctrine.*

The statute held unconstitutional by the district court, section 42-2-123(11), C.R.S. 1973, provides:

(11) If at such hearing it appears that the record of the driver sustains suspension as provided in this section, the department shall immediately suspend such driver's license, and such license shall then be surrendered to the department. If at such hearing it appears that the record of the driver does not sustain suspension, the department shall not suspend such license and shall adjust his accumulated-point total accordingly. In the event that the driver's license is suspended, the department may issue a probationary license for a period not to exceed the period of suspension, which license may contain such restrictions as the department deems reasonable and necessary and which may thereafter be subject to cancellation as a result of any violation of the restrictions imposed therein. The department may also order any driver whose license is suspended to take a complete driving reexamination. After such hearing, the licensee may appeal the decision of the district court as provided in section 42-2-127.

To facilitate enforcement of the statute, the General Assembly granted the director of the Department power to promulgate rules and regulations (Section 42-1-204, C.R.S. 1973), but the director has not exercised that power. As a result of his inaction, there are no rules or regulations to guide hearing officers in determining whether to grant or deny probationary licenses.

The Department seeking reversal of the district court's holding argues that this statutory scheme provides sufficient guidance to govern its exercise of the license suspension power, and therefore the delegation of legislative power is valid.

■ This court has previously held that a legislative delegation of power to an administrative agency is valid if the legislature has provided sufficient standards to guide the agency's exercise of that power. *People v. Willson*, 187 Colo. 141, 528 P.2d 1315 (1974); *Fry Roofing Co. v. Department of Health*, 179 Colo. 223, 499 P.2d 1176 (1972); *People v. Giordano*, 173 Colo. 567, 481 P.2d 415 (1971); *State Board of Cosmetology v. Maddux*, 162 Colo. 550, 428 P.2d 936 (1967); *Asphalt Paving Co. v. Board of County Commissioners*, 162 Colo. 254, 425 P.2d 289 (1967); *Swisher v. Brown*, 157 Colo. 378, 402 P.2d 621 (1965). Where the power to be exercised relates to regulations under the police power, and it is impracticable to fix rigid standards without destroying the

flexibility necessary for administrative officials to carry out the legislative will, we have approved statutes providing only rather broad and general standards for administrative action. *See, e.g., Asphalt Paving Co. v. Board of County Commissioners, supra.*

■ Here the challenged provision is part of the Uniform Safety Code of 1935, which has as its obvious purpose the protection of the public safety on Colorado highways. *See People v. Nothaus*, 147 Colo. 210, 363 P.2d 180 (1961). This general purpose, of course, is to be considered when a hearing officer determines whether to grant a probationary license in a particular case. However, to avoid the inefficiency and potential unfairness of seeking to provide, in advance, rigid detailed solutions to unforeseeable problems of infinite variety, the general assembly has reasonably chosen to leave to the Department the task of defining more precise guidelines for its hearing officers. This broad scheme enables the Department to utilize its expertise in determining what specific facts may be relevant to granting or denying probationary drivers' licenses.

■ It is important to recognize that, as a practical matter, procedural safeguards in administrative proceedings are just as essential as a broad legislative statement of standards. *See generally K. Davis, Administrative Law Treatise*, §2.00-1, *et seq.* (1970 Supp.). In this case, while the General Assembly has left broad discretion in the Department it has also provided for a right to a hearing (section 42-2-123(8), C.R.S. 1973) and a right to judicial review (section 42-2-127, C.R.S. 1973). Any abuse of discretion by agency personnel is thus subject to review by the courts.

■ In short, the General Assembly has elected to leave the case-by-case decisions to administrators who are familiar with the everyday problems of traffic code enforcement and highway safety. Clearly, in this area a broad delegation is the only practical approach. Moreover, no advantage would be gained if this court were to require the General Assembly to burden the statute with further detail regarding general standards, for the statute's purpose and policies are already quite apparent.

■ Therefore, since the overall statutory scheme — of which the probationary license provision is a part — provides sufficient general standards to guide its application, and contains adequate safeguards against administrative abuse, we hold that section 42-2-123(11) is not *on its face* an unconstitutional delegation of legislative power.

B. *Due Process.*

■ The statute *as applied*, however, fails to adequately protect the right of a driver to procedural due process in determining whether or not a probationary license shall be granted. A major concern in reviewing administrative actions is to protect against arbitrary decisions by agency personnel. Standards supplied by the legislature, no matter how detailed, can only provide partial protection. Here, however, the General Assembly

went beyond merely indicating the broad policies to be forwarded. The statute also provided for adoption, by the agency, of more specific rules and regulations to limit the exercise of the admittedly broad discretionary power. Section 42-1-204, C.R.S. 1973, *supra.* By failing to follow that statutory suggestion, the Department has left the granting or denial of probationary drivers' licenses solely to the unfettered discretion of individual hearing officers. As a result, neither the public nor the courts have any means of knowing in advance what evidence might be considered material to any particular decision. Nor is there any assurance that each hearing officer will not, consciously or subconsciously, follow standards quite different from those applied by his or her colleagues.

In the instant case, for example, the record fails to indicate why the hearing officer denied Ms. Elizondo's request for a probationary license. Although the hearing officer's integrity is not questioned, in this case as in every other, there is no way for a reviewing court to determine whether a hearing officer has or has not abused his discretion. Without some stated guidelines, and specific findings of fact, judicial review is a hollow gesture. "[J]udicial review can correct only the most egregious abuses. Judicial review must operate to ensure that the administrative process itself will confine and control the exercise of discretion. Courts should require the administrative officers to articulate the standards and principles that govern their discretionary decisions in as much detail as possible. Rules and regulations should be freely formulated by administrators, and revised when necessary. Discretionary decisions should more often be supported with findings of fact and reasoned decisions. When administrators provide a framework for principled decision-making, the result will be to diminish the importance of judicial review by enhancing the integrity of the administrative process, and to improve the quality of judicial review in those cases where judicial review is sought." *Environmental Defense Fund, Inc. v. Ruckelshaus,* 142 U.S. App. D.C. 74, 439 F.2d 584, 598 (1971).

In the instant case, even though legislative prescription of more specific standards would serve little practical purpose, the breadth of the power delegated assumes that the agency, through rules and regulations, will provide its own guidelines and limitations. Absent such guidelines, an applicant who meets all *stated* requirements for a probationary license has no idea what further factors might influence a hearing officer's decision. Moreover, if his request is denied, he has no right to a statement of reasons and no basis upon which to attack the decision on appeal.

The use of motor vehicles on the public highways of this state is an adjunct of the constitutional right to acquire, possess, and use property which cannot be taken away without due process of law. *Love v. Bell,* 171 Colo. 27, 465 P.2d 118 (1970); *People v. Nothaus, supra.* Therefore, we hold that due process requires that the Department of Revenue promulgate rules or regulations to guide hearing officers in their decisions

regarding requests for probationary licenses. *See Holmes v. New York City Housing Authority*, 398 F.2d 262 (2d Cir. 1968); *Barnes v. Merritt*, 376 F.2d 8 (5th Cir. 1967); *Hornsby v. Allen*, 326 F.2d 605 (5th Cir. 1964); *City of Santa Clara v. Kleppe*, 418 F. Supp. 1243 (N.D. Cal. 1976); *Baker-Chaput v. Cammett*, 406 .F. Supp. 1134 (D. N.H. 1976); *St. Augustine High School v. Louisiana High School Athletic Association*, 270 F. Supp. 767 (E.D. La. 1967); *Smith v. Ladner*, 288 F. Supp. 66 (S.D. Miss. 1966); *City of Atlanta v. Hill*, 238 Ga. 413, 233 S.E.2d 193 (1977); *Pennsylvania State Board of Pharmacy v. Cohen*, 448 Pa. 189, 292 A.2d 277 (1972). These rules or regulations must be sufficiently specific to inform the public what factors will be considered relevant by Department hearing officers, so that requests for probationary licenses may be supported by relevant evidence and arguments. Furthermore, to make judicial review a meaningful process, the rules or regulations must require that hearing officers specifically state, in each case where a probationary license is denied, the reasons for the denial. *See United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925 (2d Cir. 1974).

Although these requirements cannot *guarantee* a fair hearing, they will reduce significantly the possibility that the decision process will be arbitrary.

"[A] requirement of procedural regularity at least renders arbitrary action more difficult. Moreover, proper procedures will surely eliminate some of the arbitrariness that results, not from malice, but from innocent error." *Board of Regents v. Roth*, 408 U.S. 564, 591, 92 S.Ct. 2701, 2716, 33 L.Ed.2d 548, 569 (1972) (Marshall J., dissenting).

 Although we agree with the district court's finding of constitutional infirmities in the application of section 42-2-123(11), we cannot sustain the trial court's action in striking down both the license suspension statute and the probationary licensing provision. The suspension of drivers' licenses, being based on a point system, involves no discretion on the part of an administrator, and therefore· is not subject to abuse of discretion. *See Michels v. Motor Vehicle Division of Department of Revenue*, 32 Colo. App. 106, 506 P.2d 1243 (1973). Because the portion of the statute dealing with suspension of licenses is complete in itself and independent of the portion of the statute dealing with probationary licenses, the two provisions are severable. *See Covell v. Douglas*, 179 Colo. 443, 501 P.2d 1047 (1972). Thus, we hold that it was error to invalidate the *suspension* of Ms. Elizondo's license. Rather, because a hearing meeting due process standards was never held, the action must be remanded for a new hearing on the merits of Ms. Elizondo's request for a probationary license. The *suspension* of her license was valid, however, and must be reinstated.

 We further order that the Department of Revenue, Division of Motor Vehicles, shall not deny any requests for probationary drivers'

licenses until adequate rules or regulations setting out standards to govern probationary licensing hearings have been promulgated. It may be argued that this order raises the possibility that incompetent or unsafe drivers may be granted probationary licenses, but the Department can eliminate that danger by prompt action under the emergency rules provision of subsection 24-4-103(6), C.R.S. 1973. Under this provision, temporary or emergency rules may be adopted without notice, are effective upon adoption and may remain in effect up to three months. If the Department complies with this subsection, it can insure protection of the public safety immediately and during the time required to fulfill formal rule-making requirements and promulgate permanent rules.

## II.

 The appellee also successfully contended in the district court that she was prejudiced by the fact that a form order of suspension bearing her name had been prepared *before* her suspension hearing took place. We disagree. Although the record contains no evidence on this point, it is readily apparent that the procedure was merely one of administrative convenience, and involved no prejudgment by the hearing officer. The officer thoroughly reviewed Ms. Elizondo's traffic citation record, and only upon ascertaining the record's correctness did he sign and issue the suspension order. While this clerical procedure falls short of ideal public relations, the mere fact that a driver's name is typed on a form that, after a hearing, may become a suspension order does not in and of itself indicate prejudice.

Accordingly, the district court's order reversing the suspension of Ms. Elizondo's driver's license is reversed, and the cause remanded for judgment by the district court consonant with the views expressed in this opinion.

MR. JUSTICE GROVES does not participate.