Jose L. MARTINEZ, Petitioner,

v.

INDUSTRIAL COMMISSION of the State of Colorado, Charles J. McGrath, Director of the Division of Labor, and GAF Corporation, Respondents.

No. 80CA0868.

Colorado Court of Appeals, Div. I.

March 26, 1981.

Rehearing Denied April 16, 1981.

Certiorari Denied Aug. 4, 1981.

Karp, Goldstein & Stern, Jeffrey A. Goldstein, Denver, for petitioner.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Molly Sommerville, Asst. Atty. Gen., Denver, for respondents Indus. Com'n of Colo. and Charles J. McGrath, Director of the Division of Labor.

Watson, Nathan & Bremer, P. C., J. Andrew Nathan, Denver, for respondent GAF Corp.

BERMAN, Judge.

In this workmen's compensation case, claimant seeks review of an Industrial Commission order which awarded him compensation for a scheduled injury, but otherwise denied compensation for permanent partial disability and lost wages. We affirm.

The record reveals that on December 17, 1975, claimant's right arm was injured in an industrial accident. Employer admitted liability, but only for temporary total disability, rehabilitation benefits, and permanent 98% loss of use of the arm as measured at the elbow. Claimant contested employer's attempt thus to limit its liability. Ultimately, on August 21, 1980, the Industrial Commission gave final approval to employer's admission.

Under § 8–51–104, C.R.S. 1973, benefits may be awarded for injuries as scheduled in that section, "or the director may award such compensation under the permanent partial disability section of this article as

the director in his discretion may determine from the particular facts in each case." Section 8–51–104(7), C.R.S. 1973. On this review, claimant premises his argument upon the absence of any statutory criteria or administrative rules to guide the director in the exercise of the discretion for which the quoted subsection provides. It is contended that, owing to the absence of such guidance, the Industrial Commission's decision to measure claimant's benefits according to the statutory schedule, rather than on the basis of permanent partial disability (as provided in § 8–51–108, C.R.S. 1973), was a purely arbitrary one. Claimant insists, therefore, that he was denied due process of law. We disagree.

Claimant grounds his argument upon the authority of *Elizondo v. Motor Vehicle Division*, 194 Colo. 113, 570 P.2d 518 (1977). At issue in *Elizondo* was the constitutionality of § 42–2–123(11), C.R.S. 1973, which provides for probationary drivers' licenses. The statutory scheme of which that section is a part contains a general authorization to the Department of Revenue, Motor Vehicles Division, to promulgate rules and regulations. Section 42–1–204, C.R.S. 1973. The division, however, had not adopted any such rules to limit the exercise of discretion by individual hearing officers in granting or denying probationary drivers' licenses. The Colorado Supreme Court held § 42–2–123(11) unconstitutional *as applied*, owing to the absence of such limits upon the hearing officer's discretion.

■ Here, the first aspect of claimant's argument is premised upon a lack of *statutory* criteria to govern the Industrial Commission's exercise of discretion. Thus, claimant in effect challenges the *facial* constitutional validity of the provision here in question. In this regard, claimant's reliance upon *Elizondo* is misplaced, for the *Elizondo* court found the statute there under consideration to suffer no facial constitutional infirmity. Similarly, we perceive no facial invalidity in the statute under instant consideration.

■ The second aspect of claimant's argument, premised upon lack of administrative rules, may be deemed an attack upon the statute *as applied*. As to this aspect of claimant's argument, we find material differences between *Elizondo* and the case at bar.

In *Elizondo*, the Court stated: "the record fails to indicate why the hearing officer denied Ms. Elizondo's request for a probationary license. Although the hearing officer's integrity is not questioned, in this case as in every other, there is no way for a reviewing court to determine whether a hearing officer has or has not abused his discretion." Here, however, the referee articulated the specific basis for the manner in which he exercised his discretion. That articulation reads, in part, as follows:

> "The claimant has a burden of proof to establish a working unit rating and the Referee finds the claimant has failed to sustain that burden. The claimant was offered and received substantial vocational rehabilitation benefits and the claimant is presently employed and using his non-dominant injured extremity. Dr. Harder, [claimant's examining physician] who is the only physician to give a working rating, testified at the Division of Labor that he took into account non-medical factors in establishing his rating. Consideration of such factors is within the sole discretion of the Referee and the Referee finds that the evaluation by the treating physician, Dr. Horner, is the most persuasive."

The quoted findings provide a basis for review, lend support to the referee's ruling, and offer guidance for future claimants. Thus, the findings answer, in part at least, the concerns which troubled the *Elizondo* court.

More importantly, however, the legislative, judicial, and administrative history associated with the Workmen's Compensation Act, and the policy considerations surrounding that Act are different from those which inhere in Motor Vehicles Division proceedings. The instant case illustrates some of the differences. For example, *Elizondo* involved an outright deprivation of what has been deemed both a personal liberty and a

property right. *See People v. Nothaus*, 147 Colo. 210, 363 P.2d 180 (1961). Also, because that deprivation was ultimately premised upon past misconduct, *Elizondo* may be regarded as a case involving punishment. And, for all that appears in *Elizondo*, no specialized body of evidence was considered concerning the propriety there of a grant or denial of a probationary operator's license.

In contrast, the instant case concerns an interest in property only, as to which the "due process standard is less stringent." *Lamm v. Barber*, 192 Colo. 511, 565 P.2d 538 (1977). Also, it concerns not punishment but benefits; benefits to which all parties agree claimant is entitled, with the question being only as to the *amount* of benefits to be granted. And, unlike *Elizondo*, the referee here had the help of expert medical testimony, the very sort of testimony in the evaluation of which the Industrial Commission is especially experienced. The availability and established use of expert medical opinion itself tends somewhat to circumscribe the Commission's exercise of discretion in matters of the instant sort. That, coupled with the limited nature of the question "how much to award," renders a proceeding of this kind less fraught with potential for mischief than that which the *Elizondo* court considered.

Nor does the Commission operate entirely in a statutory vacuum respecting the question in issue, for all portions of the Workmen's Compensation Act are to be read together. *McBride v. Industrial Commission*, 97 Colo. 166, 49 P.2d 386 (1935); *Casa Bonita Restaurant v. Industrial Commission*, Colo.App., 624 P.2d 1340 (1981). As a result, in deciding whether to proceed under § 8–51–104 or § 8–51–108, the Commission must necessarily consider what the effect of applying § 8–51–108 would be. In doing that, the Commission is bound to take "into consideration not only the manifest weight of the evidence but also the general physical condition and mental training, ability, former employment, and education of the injured employee." Section 8–51–108(1)(b), C.R.S. 1973 (1980 Cum.Supp.). The Com-

mission's examination into the listed factors further reduces the likelihood of arbitrary action.

The Commission's administrative expertise in determining the *degree* to which an injured worker's position in the labor market has been impaired should render the Commission qualified to evaluate the *degree* to which it is appropriate to extend benefits. In this regard, the Commission's task is often a subtle one which involves integration of a complex assortment of factors. The Commission could properly conclude that such an evaluation is better performed free of the rigidity of formal regulations. *See generally Duenas-Rodriguez v. Industrial Commission*, Colo., 606 P.2d 437 (1980).

The Colorado courts have long recognized the above outlined considerations. In the much-cited case *Byouk v. Industrial Commission*, 106 Colo. 430, 105 P.2d 1087 (1940), for example, it was iterated that "[i]n determining the extent or degree of disability of an injured workman upon the facts of each case, it is axiomatic that *the Industrial Commission is vested with the widest possible discretion with the exercise of which the courts will not interfere.*" (emphasis added) *See also Casa Bonita Restaurant, supra.*

We presume that the General Assembly is aware of this consistent line of judicial authority. *See generally Colorado v. Cooke*, 150 Colo. 52, 370 P.2d 896 (1962). That legislative body has not chosen to truncate the Commission's discretion as to the mentioned class of issues. Rather, the General Assembly has merely *authorized*, not *mandated*, promulgation of regulations as the Commission deems advisable. Section 8–46–108, C.R.S. 1973. Under these circumstances, we decline to mandate a specificity, in the form of regulations, which the General Assembly itself has chosen not to impose.

We conclude that the reasoning in *Elizondo* is not properly extendable to the case at bar. Nor do we find the Industrial Commission's instant order to be the product of arbitrariness or caprice; consequently, we perceive no abuse of discretion.

We have considered claimant's other contentions on this review, and find them lacking in merit.

Accordingly, the Industrial Commission's order is affirmed.

COYTE and STERNBERG, JJ., concur.