Thomas **ALVAREZ**, Plaintiff-Appellant,

v.

**STATE of Colorado, DEPARTMENT OF CORRECTIONS, James G. Ricketts, Executive Director, Department of Corrections, William Wilson, Superintendent of Canon Correctional Facility, Donald Evans, Superintendent of Fremont Correctional Facility, Administrative Adjustment Board of Fremont Correctional Facility and Appeals Committee of Fremont Correctional Facility, Defendants-Appellees.**

No. 80CA1073.

Colorado Court of Appeals,
Div. II.

Aug. 13, 1981.

Rehearings Denied Sept. 17, 1981.

Certiorari Denied Dec. 14, 1981.

James A. Dubee, Littleton, for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for defendants-appellees.

TURSI, Judge.

Plaintiff, Thomas Alvarez, appeals a judgment of the district court dismissing his complaint seeking reversal of his prison disciplinary determination by the Department of Corrections Administrative Adjustment Board. We affirm in part and reverse in part.

In July 1979, Alvarez was an inmate housed in the medium security portion of the Canon City correctional facility. On July 10, 1979, his cell was searched, and following this search he was charged with four violations of the Code of Penal Discipline. On July 12, 1979, a hearing was held before the Administrative Adjustment Board and Alvarez was found guilty of three of the four charges. These were possession of dangerous contraband (Class 1), possession of dangerous drugs (Class 2), and possession of drug paraphernalia (Class 2). He was assessed a penalty of forty-nine days punitive segregation, one hundred forty-two days loss of privileges, forty-five days loss of good time and regressive transfer to maximum security. This decision was approved on appeal by the Appeals Committee, and Superintendent of the correctional facility.

On September 7, 1979, Alvarez filed a complaint pursuant to the provisions of C.R.C.P. 106 and the Administrative Procedure Act, § 24–4–106, C.R.S. 1973 (1980 Cum. Supp.). Several hearings were held and on March 17, 1980, the action was dismissed. It is from this judgment that Alvarez appeals.

■ Alvarez contends that the Code of Penal Discipline Rule III A 1 violates his right to due process because it creates an irrebuttable presumption that knowledgeable possession may be inferred if an object is found on the person or in the cell of an inmate where it is likely that only the inmate could have placed it. This argument is without merit.

The challenged rule permits accused inmates to rebut any presumption of knowledgeable possession by showing possible access by other persons to the place in which the contraband was found. Furthermore, due process is satisfied if the evidence necessary to invoke the inference is sufficient for a rational fact-finder to find the inferred fact beyond a reasonable doubt and if the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. *People v. McClendon*, 188 Colo. 140, 533 P.2d 923 (1975). That due process standard is met here.

■ Alvarez's next contention is that there was not sufficient competent evidence to support the decision of the Board. He bases this argument on the fact that no physical or testimonial evidence was offered by the Board, and it relied solely on Alvarez's testimony and on the notice of charges containing a summary report which was read into the record. This contention lacks merit.

The summary report provided considerable detail as to the nature and substance of the charges. Alvarez did not contest the allegation that the contraband was found in his cell, and his sole defense during the hearing was that the contraband simply was not his. Upon reviewing the record of the disciplinary proceeding, we find that there was sufficient evidence to support the Board's findings of guilty on three of the four charges, and we will not substitute our judgment for that of the Board. *Board of County Commissioners v. Simmons*, 177 Colo. 347, 494 P.2d 85 (1972).

■ Alvarez also contends that the unbridled discretion given to the Administrative Adjustment Board in assessing penalties is violative of due process as guaranteed by the Colorado Constitution. We agree.

The Code of Penal Discipline of the Colorado Department of Corrections establishes, at all facilities of the Department, a system of prohibitions and sanctions dealing with inmate conduct which causes or threatens to cause harm to self, others or property. The Code requires notice of charges and a hearing before an impartial hearing officer or board with the right to present evidence and request the attendance of witnesses.

Upon completion of the hearing, the hearing officer, or board by majority vote, determines the inmate's guilt or innocence and what disciplinary action, if any, should be imposed. The inmate has a right of appeal to the superintendent or director.

The Code of Penal Discipline Rule II C 1 provides in part:

"Any or all of the following sanctions may be imposed at the discretion of the Hearing Officer or Board upon a finding of guilty for a Class I or Class II offense

. . . .

c. Loss of privileges.

d. Punitive Segregation for up to thirty (30) days.

e. Change in security designation . . . .

f. Loss of all or any part of accumulated statutory good time . . . ."

The Code of Penal Discipline in effect at the time of the hearing granted the Board complete discretion in assessing sanctions after a finding of guilt. Class I and II offenses for which these sanctions may be imposed range from murder, manslaughter, and kidnapping to refusal to work, entering into contracts, and verbal abuse.

■ In speaking of procedural due process our Supreme Court had said that "[a] major concern in reviewing administrative actions is to protect against arbitrary actions by agency personnel." *Elizondo v. State Department of Revenue*, 194 Colo. 113, 570 P.2d 518 (1977). *See People v. Lepik*, Colo., 629 P.2d 1080 (1981). When an administrative decision is left to the unfettered discretion of individual hearing officers or boards, neither those affected by the agency action, the public, nor the courts have any means of knowing in advance what evidence might be considered material to a particular decision. Nor is there any assurance that each hearing officer or board will not, consciously or subconsciously, follow standards quite different from those applied by his/her colleagues, or board counterpart. *Elizondo v. State Department of Revenue, supra.* Furthermore, penalties imposed on a person must be rationally based upon the variety of evil proscribed and must bear a reasonable relationship to the persons involved and the public purpose sought to be achieved. *See People v. Montoya*, 196 Colo. 111, 582 P.2d 673 (1978); *People v. Colasanti*, Colo., 626 P.2d 1136 (1981).

The recently adopted *ABA, Standards Relating to the Legal Status of Prisoners* § 23–3.1 at 10 (4th Tent. Draft, 1980) suggests that rules for prisoner conduct should include a schedule indicating the maximum and minimum possible punishment for each offense, proportionate to that offense. The Commentary to this Standard states:

"Due process also requires a schedule of penalties. One could not envision, for example, a statutory scheme that simply described illegal acts and then allowed each individual judge, parole board, or other tribunal to determine the time of release without further restriction. Moreover, it is now well settled that penalties must bear some proportion to the offense being punished, measured in some objective fashion, and that disproportionate penalties will be struck down, both within and without the prison walls.

The requirement that a schedule of punishments be promulgated is not onerous. Recently many prison systems, some voluntarily, others because of litigation, have rewritten their rules accordingly. This requirement will have beneficial results other than the relaxation of tensions within the prison; the standards will guide corrections officials as well as prisoners, and will offer a valuable tool for state-level correctional administrators to promote consistency within and among institutions." (footnote omitted)

In this regard, we note that the new Code of Penal Discipline effective July 1, 1981, incorporates a detailed schedule of offenses and a range of authorized sanctions for each of the enumerated offenses.

Accordingly, we conclude that Code of Penal Discipline Rule II C 1 here at issue is unconstitutional, and we reverse the district court's finding that the penalties imposed on Alvarez were not violative of due process.

As regards whether this holding of unconstitutionality should be of retroactive effect, we find applicable the test for determining the retroactivity of rules of criminal procedure set out in *Adams v. Illinois*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1973), and adopted by the Colorado Supreme Court in *People v. Hardin*, Colo., 607 P.2d 1291 (1980). It was stated in *Adams* that retroactive effect should be given "where the 'major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials . . . .'" *Adams v. Illinois, supra*, 405 U.S. at 280, 92 S.Ct. at 918, 31 L.Ed.2d at 207.

Since the provisions of the rule that we have found to be constitutionally infirm do not relate to the integrity of the fact finding process, but rather concern only the imposition of penalties, we find no justification for retroactive application of our holding. Further, in the area of prison discipline, great weight is given to the significant impact a retroactive ruling would have on the administration of the prison and the good faith reliance prison officials placed on the existing rule. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which denied retroactive application to due process requirements for prison disciplinary proceedings. We therefore hold that our finding that Rule II C 1 is unconstitutional applies only to the present case, those cases pending in which the issue has been raised, and all cases involving similar prosecutions under this code occurring after this date.

We find no merit in the remainder of Alvarez's arguments.

The judgment is affirmed insofar as it affirmed the finding that Alvarez was guilty of the charges; it is reversed insofar as it represents an affirmance of the penalty imposed; and the cause is remanded with directions to the district court to order the board to vacate all penalties imposed and dismiss further disciplinary proceedings on these charges.

PIERCE, J., concurs.

STERNBERG, J., concurs in part, dissents in part.

STERNBERG, Judge, concurring in part and dissenting in part:

I agree with the conclusion of the majority that Discipline Rule III A 1 does not violate Alvarez' due process rights. However, I disagree with the majority that the Code of Penal Discipline under which Alvarez was punished is unconstitutionally overbroad, and therefore dissent from that portion of the opinion.

In my view the issue should be limited to whether the punishment to Alvarez was reasonable considering the violations he committed. Neither the fact that the ABA standards suggest a more detailed schedule of punishment, nor the adoption of a new, more detailed code by the authorities leads to the conclusion that the schedule under which Alvarez was punished is unconstitutional.

I would hold that the punishment was not disproportionate to the offenses and thus would affirm the judgment.