GERIATRICS, INC., d/b/a Eventide of Durango, a Nevada corporation authorized to do business in Colorado, Plaintiff-Appellee,

v.

COLORADO STATE DEPARTMENT OF HEALTH and Anthony D. Robbins, Director of the Colorado State Department of Health, and James E. Dotson, Hearings Examiner, State Department of Administration, Defendants-Appellants,

and

GERIATRICS, INC., d/b/a Eventide of Durango, a Nevada corporation authorized to do business in Colorado, Plaintiff-Appellee,

v.

COLORADO STATE DEPARTMENT OF SOCIAL SERVICES and Armando Atencio, Director of the Colorado State Department of Social Services, La Plata County Department of Social Services and Mark Tandenberg, Director of the La Plata County Department of Social Services, and James E. Dotson, Hearings Examiner, State Department of Administration, Defendants-Appellants.

No. 81CA0647.

Colorado Court of Appeals,
Div. III.

March 11, 1982.

Rehearings Denied April 15, 1982.

Certiorari Granted Aug. 30, 1982.

Miles & McManus, Frederick Miles, Denver, for plaintiff-appellee.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Gregory C. Smith, Asst. Attys. Gen., Denver, for defendants-appellants.

STERNBERG, Judge.

Geriatrics, Inc., owns and operates a nursing home named Eventide of Durango. Eventide was licensed by the Department of Health (Health) to provide nursing care services generally and more specifically to provide services to Medicaid beneficiaries. After this certification, the Department of Social Services (Social Services) issued a provider agreement recognizing Eventide's right to reimbursement for Medicaid services provided.

Following an unannounced inspection of the facilities, Health notified Eventide on March 3, 1977, of its intention to terminate the Medicaid certification and not to renew Eventide's license. On March 15, 1977, Social Services informed Eventide of its intention to terminate the Medicaid provider agreement. Eventide appealed those agency actions, and the district court reversed. Health and Social Services appeal. We affirm in part and reverse in part.

## I. SOCIAL SERVICES' FAILURE TO FILE ITS REGULATIONS

■ Social Services' action to terminate Eventide's Medicaid provider agreement cannot stand. The regulations relied upon by Social Services had not been filed and made available for public inspection as mandated by the statute then in effect, § 24-4-103(12), C.R.S. 1973, which provided in pertinent part:

"All rules of any agency . . . when issued, shall be filed, in duplicate, in the office of the secretary of state, and the office of the secretary of state shall require of each agency so filing its rules that they be filed in such form and so indexed and numbered as to make them readily available for public inspection. One copy of such rules . . . shall be kept permanently on file and up to date in the office of the secretary of state, and a duplicate copy shall be delivered by the office of the secretary of state to the supreme court library where it shall also be kept permanently on file and up to date. In both the office of the secretary of state and supreme court library, such rules . . . shall

be made available for public inspection ...."

We view the statute as mandatory and the decision in *People v. Bobian,* Colo., 626 P.2d 1132 (1981) as dispositive of this issue. Consequently, we agree with the trial court that Social Services' termination of Eventide's Medicaid provider agreement must be set aside.

## II. SUBJECT MATTER JURISDICTION OF HEALTH'S HEARING OFFICER

Section 24–4–105(1), C.R.S. 1973 states the purpose of the statute is to accord due process to all parties. Section 24–4–105(3), C.R.S. 1973, provides that an agency, or, "if otherwise authorized by law," a hearing officer, shall conduct the administrative hearing. The statute authorizing the director of Health to designate a hearing officer to conduct proceedings was not effective until 10 days after the agency hearing had actually begun. *Compare* § 25–1–109(1)(c), C.R.S. 1973, *with* § 25–1–109(1)(c), C.R.S. 1973 (1981 Cum. Supp.). The trial court held, therefore, that the hearing officer lacked authority to conduct the original hearing.

Eventide first raised this issue in its appeal of the initial decision of the hearing officer, some 15 months after the hearing officer had been designated. It argues that this is an issue of subject matter jurisdiction and, as such, may be raised at a later date in the appeal process. We do not agree that this is a question of subject matter jurisdiction.

■■■ Subject matter jurisdiction relates to the power of the agency to deal with a particular case; it is the authority lawfully conferred on a tribunal to handle the general subjects involved. *State Board of Dental Examiners v. Savelle,* 90 Colo. 177, 8 P.2d 693 (1932); *Sanchez v. Straight Creek Constructors,* 41 Colo.App. 19, 580 P.2d 827 (1978). Health was given that power in § 25–1–109(1)(c), C.R.S. 1973. The question of who would hear the case was not one of subject matter jurisdiction. And, while objection may be raised, if timely, such objection cannot be raised many months after the technical impropriety occurred.

*United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952) is persuasive. There, a motor carrier applied to the Interstate Commerce Commission for a certificate of convenience and necessity. A hearing was conducted by an examiner who had not been appointed pursuant to § 11 of the federal administrative procedure act; however, there was no objection to the examiner's authority during the administrative proceedings. The certificate was granted and on appeal the examiner's authority was challenged. The sole issue before the Supreme Court was whether Tucker Truck's objection, raised for the first time on appeal, was erroneously entertained by the lower court. The Supreme Court held:

> "[T]he defect in the examiner's appointment was an irregularity which would invalidate a resulting order if the Commission had overruled an appropriate objection made during the hearings. But it is not one which deprives the Commission of power or jurisdiction, so that even in the absence of timely objection its order should be set aside as a nullity."

*Accord Federal Power Commission v. Colorado Interstate Gas Co.,* 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955); *Fall River Savings Bank v. National Labor Relations Board,* 649 F.2d 50 (1st Cir. 1981); *Director, Office of Workers Compensation Programs v. North American Coal Corp.,* 626 F.2d 1137 (3d Cir. 1980); *National Labor Relations Board v. Children's Baptist Home,* 576 F.2d 256 (9th Cir. 1978).

The cases relied on by Eventide are distinguishable. In *Flavell v. Department of Welfare,* 144 Colo. 203, 355 P.2d 941 (1960), the court found that the agency had exceeded its jurisdiction when it imputed ½ of a wife's assets to a husband, and denied the husband pension money. The agency had presumed this as a rule of law and the Supreme Court knew of no such rule. The agency action taken in *Flavell* went to the substance of its statutory authority to determine what the law was.

In *Denver v. Gibson,* 37 Colo.App. 130, 546 P.2d 974 (1975), the Civil Service Commission had usurped its power under the Denver City Charter which allowed the police department discretion in hiring. The commission could only test, make lists, and recommend, but the police department alone had the power to hire. *Cf. Colorado Ute Electric Ass'n, Inc. v. Air Pollution Control Commission,* Colo.App., 648 P.2d 150 (1981) (requiring interpretation of organic statute). *Colorado v. Adolph Coors Corp.,* 29 Colo.App. 240, 486 P.2d 43 (1971) dealt with subpoena power which had not been given the civil rights commission in the specific instance. *Public Utilities Commission v. Colorado Motorway, Inc.,* 165 Colo. 1, 437 P.2d 44 (1968) involved action by the commission which denied procedural due process to the defendant. The court there held that the action exceeded the commission's authority. Unlike the preceding cases, this case deals with a procedural flaw. It was not whether Health had authority to hear the case under the statute, but whether this hearing officer could hear the case.

Consequently, we hold that because Eventide failed to make timely objection to the hearing officer's appointment, it cannot raise the objection now.

### III. LACK OF SPECIFICITY OF FEDERAL REGULATIONS

Health based its decertification on regulations promulgated by the United States Department of Health, Education and Welfare (now the Department of Health and Human Services). These regulations are found at 20 C.F.R. § 405.1101, et seq. (1976). They occupy 20 pages in the Code of Federal Regulations and consist of 17 conditions of participation, approximately 85 standards, approximately 540 factors, and 3 pages of definitions. Nevertheless, the trial court found that those regulations as applied denied Eventide due process of law because they failed to specify the degree of seriousness of non-compliance which will cause an inspector to place a condition out of compliance.

■ These regulations have been criticized as being vague and ambiguous. Comment, *A Critical Evaluation of the Federal Role in Nursing Home Quality Enforcement,* 51 *U.Colo.L.Rev.* 607 (1980); Comment, *An Evaluation of Regulatory Standards and Enforcement Devices in The Nursing Home Industry,* 13 *Akron L.Rev.* 715 (1980). Nevertheless, they must be sustained if they bear a reasonable relationship to the legislative purpose. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

Several Colorado cases touch upon the issue of vagueness of regulations. In *Elizondo v. State of Colorado Department of Revenue,* 194 Colo. 113, 570 P.2d 518 (1977), the court reinstated a driver's license because the Motor Vehicle Division had failed to adopt regulations limiting discretionary powers of hearing officers. Also, the hearing officer was criticized as failing to state findings of fact explaining his decision. As in *Elizondo,* the General Assembly granted Health the power to adopt agency regulations. Section 25–1–108, C.R.S. 1973 (1981 Cum. Supp.). Here, however, Health adopted standards and incorporated the federal regulations. Also, in *Elizondo,* the hearing officer failed to make a record stating his reasons for the decision. Here, the hearing officer's initial decision consisted of 28 pages, and the director's decision consisted of 43 pages.

*People v. Lepik,* Colo., 629 P.2d 1080 (1981) and *Alvarez v. Department of Corrections,* Colo.App., 638 P.2d 804 (1981) both dealt with a dearth of standards and guidelines to direct administrators. The regulations relied upon by Health as enumerated above are distinguishable and are not so vague as to constitute a denial of due process. *See Mr. Lucky's, Inc. v. Dolan,* 197 Colo. 195, 591 P.2d 1021 (1979); *Earl & Sons Tire Center v. City of Boulder,* 192 Colo. 360, 559 P.2d 236 (1977).

*Swisher v. Brown,* 157 Colo. 378, 402 P.2d 621 (1965), explains the reasoning behind the rulemaking power granted administrative agencies:

"It is not necessary that the legislature supply a specific formula for the guidance of the administrative agency in a field where flexibility and adaption of the legislative policy to infinitely variable conditions constitutes the essence of the program. The modern tendency is to permit liberal grants of discretion to administrative agencies in order to facilitate the administration of laws dealing with involved economic and governmental conditions. In other words, the necessities of modern legislation dealing with complex economic and social problems have led to judicial approval of broad standards for administrative action, especially in regulatory enactments under the police power. With respect to such types of legislation, detailed standards in precise and unvarying form would be unrealistic and more arbitrary than a general indefinite standard."

We hold that the regulations relied upon by Health were not unconstitutionally applied so as to deprive Eventide of procedural due process.

## IV. NON–COMPLIANCE WITH "CONDITIONS OF PARTICIPATION"

■ The trial court held that Health's decision regarding Eventide's license and Medicaid participation were not supported by substantial evidence under § 24–4–106(7), C.R.S. 1973. The trial court adopted, as the test to determine whether a facility should be allowed to continue Medicaid participation, whether the facility was able to render adequate care. The court concluded that, since Health had discretion to continue licensing a facility having deficiencies, lack of compliance with the conditions of participation was not determinative. We disagree. Instead, we hold that where, as here, the alleged deficiencies are both numerous and substantial, violation of standards may serve as the basis for decertification.

When operators of a nursing facility desire to receive Medicaid funds, they execute a provider agreement. That agreement specifies "conditions of participation" in the Medicaid program. In order to be certified for the Medicaid program, the conditions of participation must be met. 42 U.S.C. §§ 1395cc(a)(1), 1396i(a) (1976); 42 C.F.R. § 442.202 (1979). Health has the responsibility of inspecting and enforcing these federal directives. *See* 42 C.F.R. § 431.610(g)(2) (1979).

Health conducts evaluations of the facilities, and notifies the facility if it finds a lack of compliance with the standards. The facility then submits a plan for correcting the deficiencies. If the facility fails to make the necessary corrections under the plan within a specified time limit, it breaches the terms of the provider agreement and is subject to decertification. *See generally* Jones, *Termination of Skilled Nursing Facility Medicaid Provider Agreements: Procedural Due Process Requirements,* 6 *Am. J.L. & Med.* 451 (1981); Comment, 51 *U.Colo.L.Rev.* 607, *supra;* Comment, 13 *Akron L.Rev.* 715, *supra.*

■ In this case, Health inspected Eventide three times: August 25 and 26, 1976; November 8, 1976; and February 16, 1977. On all three occasions the inspectors found numerous deficiencies. Some of the deficiencies were compounded instead of reduced between inspections. Although Health was given discretion to determine the extent of non-compliance, it was Health's responsibility to decide whether Eventide had complied with the federal regulations and the provider agreement, not whether adequate patient care had been extended. A review of the record supports Health's determination.

That portion of the judgment setting aside Social Services' cancellation of Eventide's Medicaid provider agreement is affirmed. That portion of the judgment reversing Health's decertification is reversed. However, since Health will not presently certify Eventide, Social Services may not issue a provider agreement. And, because of the potential problems with relocation of the patients, as agreed to by the Attorney General, Eventide should be given a reasonable time, not less than ninety days, to sell the facility. Alternatively, Eventide may

comply with Health's standards for recertification of the facility within that time. The cause is remanded for further proceedings to implement these rulings.

KIRSHBAUM and TURSI, JJ., concur.