**COLORADO STATE DEPARTMENT OF HEALTH and Anthony D. Robbins, Director of the Colorado State Department of Health, and Colorado State Department of Social Services and Armando Atencio, Director of the Colorado State Department of Social Services, La Plata County Department of Social Services and Mark Tandenberg, Director of the La Plata County Department of Social Services, and James E. Dotson, Hearings Examiner, State Department of Administration, Petitioners,**

v.

**GERIATRICS, INC., d/b/a Eventide of Durango, a Nevada corporation authorized to do business in Colorado, Respondent.**

No. 82SC187.

Supreme Court of Colorado,
En Banc.

April 22, 1985.

Rehearing Denied May 20, 1985.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Solicitor Gen., Gregory C.

Smith, Asst. Atty. Gen., Denver, for petitioners.

Miles & McManus, Frederick Miles, Denver, for respondent.

NEIGHBORS, Justice:

We granted certiorari to review the Colorado Court of Appeals' decision in *Geriatrics, Inc. v. Colorado State Department of Health,* 650 P.2d 1288 (Colo.App.1982). In that case, the court of appeals examined the action taken by the Colorado State Department of Health terminating the operating license and Medicaid certification of Geriatrics' nursing care facility, Eventide of Durango, and the decision of the Colorado State Department of Social Services revoking the facility's Medicaid participation agreement. The three issues upon which we granted certiorari review are whether the department of social services could lawfully base its revocation of the facility's Medicaid participation agreement on regulations not properly published in accordance with statutory requirements; whether the department of health's licensing standards violated Geriatrics' due process rights; and, whether the court of appeals properly allowed Geriatrics additional time within which to comply with those regulations. We affirm in part and reverse in part.

## I.

Geriatrics, Inc. owns and operates a nursing home named Eventide of Durango (Eventide). Eventide was licensed by the department of health to operate as a "skilled nursing facility" with a capacity of 118 beds,[1] pursuant to section 25–3–101, 11 C.R.S. (1984 Supp.). *See also* § 25–1–107(1)(1)(I), 11 C.R.S. (1984 Supp.) (department of health has power and duty to license, and to establish and enforce standards for nursing care facilities); 6 C.C.R. 1011–1 (1984) (standards for issuance of operating license). Both "skilled nursing care facilities," as defined in 42 U.S.C.

§ 1395x(j) (1982), and "intermediate health care facilities," as defined in 42 U.S.C. § 1396d(c) (1982), are eligible for participation in the federal Medicaid program.

Nursing care facilities at the time this dispute arose were certified for Medicaid participation by the Colorado Department of Health pursuant to an agreement with the United States Secretary of Health, Education and Welfare. Under this agreement, the department of health inspected the facility to determine the extent of its compliance with federal participation regulations. *See* 42 U.S.C. § 1395aa(a) (1982) (use of state agencies to determine compliance). In the case of skilled nursing care facilities, these regulations are presently specified in "conditions of participation," which are further divided and subdivided into "standards" and "elements" or "factors." 42 C.F.R. §§ 405.1101–.1137 (1984). Intermediate health care facilities must also comply with federal regulations. 42 C.F.R. §§ 442.250–.346 (1984).

After licensing and Medicaid certification of Eventide by the department of health, the department of social services entered into a Medicaid participation arrangement with Eventide, in the form of a "provider agreement." The provider agreement established Eventide's obligation to furnish services to Medicaid patients in accordance with the federal Medicaid standards, in exchange for the department of social services' agreement to reimburse the facility.

The record reveals the following chronology of pertinent events: On August 10, 1976, the department of health notified Eventide that its quarterly staffing report disclosed violations of federal and state regulations, commonly styled "deficiencies," which, if uncorrected, would result in proceedings to revoke Eventide's operating license and Medicaid certification. Later that month, an unannounced inspection of the facility by the department of health resulted in a finding that "serious deficiencies" existed and had gone uncorrected for

---

**1.** On August 27, 1976, Eventide submitted a "distinct parts" application, subsequently approved, seeking to divide its facility into a skilled nursing facility with a capacity of 60 beds and an intermediate care facility with a capacity of 58 beds.

some time. On November 8, 1976, another unannounced survey of Eventide was conducted and, although some improvement was noted, a number of deficiencies remained. An inspection conducted on February 16, 1977, resulted in notification to Eventide that, because of its "consistent inability" to comply with state and federal regulations, its Medicaid certification would be terminated and the application for renewal of its operating license would be denied. The department of social services subsequently notified Eventide that its Medicaid provider agreement would also be terminated.

Eventide requested a hearing and the issues concerning its operating license, Medicaid certification, and Medicaid provider agreement were consolidated and heard before a department of health hearing officer. The hearing officer issued an initial decision upholding the agencies' actions, to which Eventide excepted.

In its final decision, the department of health denied Eventide's application for a renewal of its license to operate, and refused to certify Eventide as a provider of skilled and intermediate care to Medicaid patients. The department of social services also issued a decision concluding that Eventide had deliberately and willfully breached its provider agreement and ordered that that agreement be terminated. The orders were stayed for 90 days to allow the attorney general to initiate and conclude proceedings placing Eventide in receivership. The department of health directed the attorney general to take these steps because, in the view of the department of health, the transfer of patients consequent to the decertification of Eventide would probably result in the deaths of some of the transferred patients. Since the evidence did not establish that the danger of continued operation of the facility by Geriatrics outweighed the danger of patient transfer, the department of health directed the attorney general to seek a receivership.

Geriatrics sought judicial review of both departments' final decisions. The Denver District Court reversed the department of health's order refusing to renew Eventide's operating license and its order terminating the facility's Medicaid certification, finding that the hearing officer had had no authority to preside over the hearing.[2] The district court also set aside the decision of the department of social services terminating Eventide's Medicaid provider agreement, on the ground that the department of social services had based its action on regulations not properly published as required by statute. The district court further found that the department of health's licensing standards and Medicaid participation regulations granted such broad discretion to agency personnel without providing specific criteria that the provisions constituted a denial of Geriatrics' due process rights. Finally, the district court concluded that the actions of the departments of health and social services were not supported by substantial evidence in the record. The court based this finding on Eventide's showing that patient care at the facility was at all

**2.** Eventide contends that the department of health was deprived of subject matter jurisdiction to hear this matter because the statute authorizing a hearing officer to preside did not become effective until 10 days after the commencement of the hearing. *See* § 25–1–109(1)(c), 11 C.R.S. (1982) (director may designate a hearing officer). We agree with the court of appeals that, while there was no statutory authorization for the initial appointment of a hearing officer, this lack did not deprive the department of health of subject matter jurisdiction. The statute then in effect conferred upon the department of health the power "[t]o hold hearings, administer oaths, subpoena witnesses, and take testimony in all matters relating to the exercise and performance of the powers and duties vested in or imposed upon the division of administration." § 25–1–109(1)(c), 11 C.R.S. (1973). Thus, subject matter jurisdiction to hear this matter was properly vested with the department of health. Although we agree with the court of appeals' holding that Eventide waived its objection to the authority of the hearing officer, *see United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952), we note that Eventide did not petition for certiorari review and it is unnecessary for us to review the court of appeals' decision on this issue once it is determined that the agency had subject matter jurisdiction.

relevant times adequate. The court inferred that a facility's right to renewal of its operating license and Medicaid certification was ultimately dependent upon whether adequate patient care was being afforded rather than upon technical compliance with the licensing standards and participation regulations.

The court of appeals affirmed the district court's ruling that the department of social services could not base its cancellation of Eventide's provider agreement on regulations not properly published. However, the court of appeals also held that Eventide's failure to object to the appointment of the hearing officer acted as a waiver of that error, that the federal regulations upon which the department of health based its decertification and delicensure of Eventide were not so vague as to violate due process requirements, and that the record supported the department of health's decertification of Eventide despite the latter's showing of adequate patient care. Thus, the court of appeals reversed the district court's order to reinstate Eventide's operating license and Medicaid certification. However, because the record contained evidence of the dangers in transferring patients from one facility to another, the court of appeals ordered that Eventide be afforded a reasonable time of not less than 90 days within which to bring the facility into compliance with the department of health's standards for recertification.

## II.

Geriatrics contends that the department of social services was precluded by statute from relying upon improperly published regulations to terminate the Medicaid provider agreement. We agree that the regulations were not published in accordance with the statutory requirements then in effect.[3]

Section 24-4-103(10), 10 C.R.S. (1982), provides that "[n]o rule shall be relied upon or cited against any person unless, if adopted after May 1, 1959, it has been published and, whether adopted before or after said date, it has been made available to the public in accordance with this section." The statute in effect at the time relevant to this matter[4] established the following publication requirements:

> All rules of any agency ... shall be filed, in duplicate, in the office of the secretary of state, and the office of the secretary of state shall require of each such agency so filing its rules, that they be filed in such form and so indexed and numbered as to make them readily available for public inspection. One copy of such rules and opinions shall be kept permanently on file and up to date in the office of the secretary of state, and the duplicate copy shall be delivered by the office of the secretary of state to the supreme court library where it shall also be kept permanently on file and up to date. In both the office of the secretary of state and supreme court library, such rules and opinions shall be made available for public inspection by any person during regular office hours. Any rule which is amended or repealed shall be kept in a separate permanent file for public inspection in the same manner as the up-to-date rules. Such amended or repealed rules shall be cross-indexed with the up-to-date rules.

Ch. 196, sec. 2, § 3-16-2(12), 1967 Colo. Sess.Laws 300, 301. The department of social services conceded during the judicial review proceedings in the district court that its pertinent regulations had not been

---

**3.** In view of our resolution of the remaining issues in this matter, it is apparent that the department of social services is presently precluded from executing a provider agreement with Eventide. *See infra* note 11. However, we granted certiorari review on this issue and we elect to resolve it notwithstanding our affirmance of the delicensure of Eventide, and our holding that the department of health is not

required to recertify Eventide except pursuant to the department's established procedures.

**4.** This provision has since been amended to eliminate many of the filing requirements. *See* 24-4-103, 10 C.R.S. (1982 & 1984 Supp.). *See also People v. Gallegos,* 692 P.2d 1074 (Colo. 1984).

published in accordance with the procedure described above.[5]

The provider agreement contained the following provision authorizing termination of the agreement under applicable regulations: "This agreement may be terminated by either party pursuant to federal and state law and regulation." The department of social services had promulgated various regulations, in effect at the time that this dispute arose, relating to the termination of provider agreements. *See generally* Rules A–4900 to A–4900.07, 10 C.C.R. 2505–9 (1979) (Standards for Denial, Termination, and Nonrenewal of Vendor Provider Agreements). Specifically, Rule A–4900.04(1) provides that "[t]he Department may terminate a provider agreement with a vendor under the Medical Assistance Program for any good cause, based on adequate and documented evidence." Termination is defined as "the cancellation of an existing provider agreement with a vendor in the Medical Assistance Program by the Department." Rule A–4900.01(2), 10 C.C.R. 2505–9 (1979). Good cause is defined by the regulations as follows:

5. *Good Cause.* As used in this section A–4900, *et seq.*, "good cause" means:

a. The vendor has demonstrated a high probability of its inability to perform its obligation under a provider agreement by prior conduct; or,

b. The vendor has substantially breached a previous or existing provider agreement with the Department, including but not limited to breach in the following manner:

(1) Failing to conform to and abide by the applicable laws of the State of Colorado and the United States; or,

(2) Failing to conform to and abide by the applicable rules and regulations of the United States Department of Health, Education and Welfare and the Department; or,

c. The vendor, either by omission or commission, is endangering or has endangered the health, safety, or well-being of beneficiaries of program services; or,

d. The vendor . has previously been found ineligible to participate in federal or state-assisted medical programs by this or another federal or state agency; or,

e. In the case of a denial or nonrenewal, the vendor refuses to accept the last reasonable offer of the Department, within the limits of available appropriations for the Medical Assistance Program; or,

f. The vendor has failed to demonstrate a sufficient need for its services.

Rule A–4900.01(5), 10 C.C.R. 2505–9 (1979).

We have previously construed sections 24–4–103(10) and (12), 10 C.R.S. (1973), requiring publication of agency regulations, in two relevant cases. *People v. Bobian*, 626 P.2d 1132 (Colo.1981); *People v. Williams*, 197 Colo. 559, 596 P.2d 745 (1979). In *Williams* we held that department of social services regulations not published in accordance with the statute could not be introduced into evidence against a defendant charged with felony theft and with failing to notify the department of social services of income increases. Because evidence sufficient to support a conviction was lacking, absent admission of the regulations, we affirmed the trial court's granting of the defendant's motion for acquittal. Similarly, in *Bobian* we ruled that evidence of the defendant's ineligibility for certain benefits administered by the department of social services was rendered incompetent by the department's failure to properly publish its regulations. In *Bobian* we characterized the statute requiring publication of regulations as affecting the substantive rights of the parties. 626 P.2d at

---

5. Eventide appended to its brief in the district court an affidavit from an assistant librarian of the Colorado Supreme Court stating that social service regulations were not filed separately or cross-indexed as required by the statute. It is apparent from the record, and the trial court found, that the department of social services did not contest this allegation. We accept the finding of the trial court that the regulations were not properly published in accordance with the statute.

1135. We rejected the state's contention that the statute should not be applied in a technical manner so as to insulate a defendant from the charge of welfare fraud:

> The People argue, however, that section 24–4–103(10) was not meant to absolve a defendant from responsibility for a fraudulent misrepresentation such as allegedly occurred in this case merely because defendant did not have notice of the technical guidelines used in calculating the amount of his entitlements. The defendant was charged under section 26–2–130, C.R.S.1973, with welfare fraud. This section prohibits a person from obtaining public assistance to which he is not entitled. In order to prove that element of its case, the prosecution had to rely upon the regulations of the department. This it was not permitted to do.

*Id.* at 1136.

As in *Bobian,* the department of social services here necessarily relied upon its regulations as the basis for the action it took. The termination of the provider agreement by the department of social services on the ground of its breach by Eventide was effected pursuant to the regulations quoted above. Because these regulations were rendered statutorily incompetent by the department's failure to properly publish them, it is precluded from relying on them to terminate the provider agreement.

### III.

The department of health also seeks review of the district court's ruling that its licensing standards are unconstitutional as applied to Eventide. Although the court of appeals held that the federal participation standards did not violate Eventide's right to procedural due process, the department

of health contends that the court of appeals failed to address the issue of the constitutionality of the state licensing standards.[6]

In holding that the application of the department of health's licensing standards violated Eventide's right to procedural due process, the district court apparently relied upon *Elizondo v. Colorado Department of Revenue, Motor Vehicle Division,* 194 Colo. 113, 570 P.2d 518 (1977).[7] In *Elizondo* we held that the department of revenue's failure to follow a statutory suggestion to adopt regulations governing the granting of probationary drivers' licenses resulted in a denial of due process to a party denied such a license. We reached that conclusion because, in the absence of such guidelines, "neither the public nor the courts have any means of knowing in advance what evidence might be considered material to any particular decision." *Id.* at 118, 570 P.2d at 521. Without such guidelines or specific findings of fact as the basis for the hearing officer's decision, judicial review of the decision was rendered "a hollow gesture." *Id.*

In contrast to *Elizondo,* here, the department of health promulgated specific and detailed regulations concerning the organization and operation of nursing care facilities. *See* Rules 1–23, 6 C.C.R. 1011–1 (1984). Moreover, the final agency decision set out detailed findings concerning the revocation of Eventide's operating license, and incorporated specific references to the regulations found to be violated. Thus, no impediments to meaningful judicial review of the agency action existed. Under these circumstances we hold that Eventide's due process rights were not violated by the regulations and procedures which provided

---

6. As indicated, *supra* note 2, Eventide did not petition for certiorari review. Thus, the correctness of the court of appeals' decision that the federal participation standards do not violate due process is not before us, and we do not elect to treat this issue. For a discussion of related issues, see *Estate of Smith v. Heckler,* 747 F.2d 583 (10th Cir.1984).

7. It is not absolutely clear that the trial court relied upon *Elizondo* as the basis of its ruling that the department's licensing standards violated due process, since the court's discussion focused on the federal participation standards. However, no other basis for the decision regarding the licensing standards was given and we infer that the discussion of *Elizondo* was intended to be applicable to that decision as well as to the federal participation standards.

the basis for the revocation of its operating license.

### IV.

■ Finally, the department of health contends that the court of appeals exceeded its powers in granting Eventide at least 90 days within which to comply with the department of health's standards for recertification.[8] We agree that, insofar as the court of appeals' opinion purports to order the department of health to recertify or relicense Eventide at the expiration of that 90-day period, the court acted in excess of its powers.[9]

■ It is fundamental that article III of the Colorado Constitution "provides for the orderly distribution of power among the three branches of state government." *People v. Montgomery*, 669 P.2d 1387, 1389 (Colo.1983). It is central to this separation of powers principle that these branches are distinct and co-equal, *Pena v. District Court of the Second Judicial District*, 681 P.2d 953 (Colo.1984), and that "no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others...." Colo. Const. art. III. "The separation of powers doctrine imposes upon the judiciary a proscription against interfering with the executive or legislative branches...." *Pena*, 681 P.2d at 956. This doctrine insures that the judiciary will not "under the pretense of deciding a case," *Montgomery*, 669 P.2d at 1389, preempt an executive agency from exercising powers properly within its own sphere. *See, e.g., Moore v. District Court*, 184 Colo. 63, 518 P.2d 948 (1974); *Banking*

*Board v. District Court*, 177 Colo. 77, 492 P.2d 837 (1972); *Colorado Department of Revenue v. District Court*, 172 Colo. 144, 470 P.2d 864 (1970).

In the instant case, the decision whether to recertify or relicense Eventide is statutorily committed to the department of health, subject to the limitations of judicial review. Section 25–3–101, 11 C.R.S. (1984 Supp.), requires nursing care facilities to be licensed by the department of health. Section 25–3–102, 11 C.R.S. (1982), provides that "[t]he department shall issue licenses to applicants furnishing satisfactory evidence of fitness to conduct and maintain such institution in accordance with the provisions of this part 1 and the rules and regulations adopted by such department." Further, section 25–3–103, 11 C.R.S. (1982 & 1984 Supp.), establishes the statutory means for the revocation or denial of operating licenses, to which the hearing provisions of section 24–4–105, 10 C.R.S. (1982), are made applicable. Moreover, section 24–4–104, 10 C.R.S. (1982 & 1984 Supp.), contains general standards regarding licensure and subsection (12) of that provision states that "[i]n an appropriate case a revoked or suspended license may be reissued."

Insofar as the court of appeals' decision purported to order the department of health to reinstate Eventide's operating license and/or its Medicaid certification, notwithstanding the statutory and regulatory framework established for such action, that decision violated the separation of powers doctrine.[10]

### V.

In summary, the court of appeals determination that the department of social ser-

---

**8.** The court of appeals granted Eventide "a reasonable time, not less than ninety days, to sell the facility," *Geriatrics*, 650 P.2d at 1292, and suggested, alternatively, that Eventide could comply with the department of health's recertification standards within that time. The department of health does not allege that the court of appeals erred in granting the time period within which to sell the facility.

**9.** In its opinion, the court of appeals mentions only the recertification of Eventide and it is not

clear whether the court intended to refer to the relicensing of the facility as well as to the Medicaid recertification. However, this uncertainty does not affect the analysis of this issue.

**10.** Insofar as the court of appeals' decision merely suggests that Eventide is free to seek recertification pursuant to established procedures, it is, of course, dicta to which the department of health can have no valid objection.

vices could not rely on its improperly published regulations to terminate Eventide's provider agreement is affirmed.[11] The court of appeals' judgment granting Eventide a reasonable time of not less than 90 days within which to qualify for recertification is reversed. Finally, we hold that Geriatrics was not deprived of due process by the procedures used by the department of health to revoke its operating license.

DUBOFSKY and KIRSHBAUM, JJ., do not participate.

---

**11.** However, as the court of appeals pointed out, the department of social services cannot enter into a provider agreement if the department of health does not certify Eventide for Medicaid participation. *See* Provider Agreements, 42 C.F.R. § 442.12 (1984).