## COLORADO DEPARTMENT OF SOCIAL SERVICES, Plaintiff-Appellant,

v.

## The DEPARTMENT OF HEALTH AND HUMAN SERVICES, Margaret M. Heckler, in her official capacity as Secretary of Health and Human Services, Donald Garrett, Norval Settle, Cecelia Sparks Ford, in their official capacities as members of the Departmental Board of Grant Appeals, and the Departmental Board of Grant Appeals, Defendants-Appellees.

### No. 84–1927.

United States Court of Appeals, Tenth Circuit.

Aug. 30, 1985.

Wade Livingston, Asst. Atty. Gen., Human Resources Section, Denver, Colo. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Denver, Colo., with him on brief), for plaintiff-appellant.

James W. Winchester, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on brief, Ronald S. Luedemann, Regional Atty., and Jay A. Swope, Asst. Regional Atty., Dept. of Health and Human Services, Denver, Colo., of counsel), for defendants-appellees.

Before SEYMOUR and SETH, Circuit Judges, and SEAY, District Judge[*].

---

[*] Honorable Frank H. Seay, Chief United States District Judge for the Eastern District of Oklahoma, sitting by designation.

SETH, Circuit Judge.

The Colorado Department of Social Services asks this court to determine if it may receive continued federal funding during state administrative and judicial review of its decision to decertify facilities providing skilled nursing care under Title XIX (Medicaid).

Colorado appeals a decision of the United States District Court for Colorado which upheld a Department of Health and Human Services Departmental Grant Appeals Board disallowance of federal monies to two Colorado nursing homes, 585 F.Supp. 522. The Board imposed a 12-month time limit on the continued flow of federal money during the state appeal process, the 12 months to start from the date of recertification appealed from not from the date of the original certification.

The question on appeal is whether the Board acted within the scope of its authority when it fashioned this cut-off date for federal funding.

Under the Medicaid program states license nursing homes and annually certify the homes meeting applicable federal standards for care and safety. When a home is certified it enters a contract with the state to provide care to Medicaid-eligible patients. The contract can only last one year. 42 C.F.R. § 442.15(a) (1984). The Colorado appeal concerns federal funding while the state attempts to decertify two homes, Eventide of Durango and Sharmar Nursing Center.

Colorado notified Eventide it intended to terminate its provider agreement after a survey. Eventide requested administrative review of this decision under the state's Administrative Procedures Act. *See* Colo. Rev.Stat. §§ 24–4–101 to 108 (1982). The administrative hearing officer's opinion terminated Eventide's provider agreement. Eventide sought judicial review of this decision in the state district court. The district court reversed the agency finding, and the

state appealed this decision and the Colorado Court of Appeals upheld the trial court. It found Colorado improperly terminated Eventide's provider agreement. *Geriatrics v. Colorado State Department of Health*, 650 P.2d 1288, 1290 (Colo.Ct.App.1982). The Colorado Supreme Court granted *certiorari* and Eventide's original appeal from the state's decision to terminate its provider agreement is pending.

Two years after Eventide began its state appeal the federal Health Care Financing Administration (HCFA), another arm of Health and Human Services, notified Colorado it would not pay a federal share for a stated period. Eventually HCFA disallowed federal financial participation (FFP) to Colorado for services provided by Eventide to patients for approximately three years.

Sharmar Nursing Center also sought administrative review of Colorado's decision to terminate its provider agreement. It received an unfavorable final decision from a hearing officer. Sharmar sought and got a court stay which validated its provider agreement pending judicial review. *See* Colo.Rev.Stat. § 24–4–106 (1982). Sharmar went out of business before the court reached the merits of its case. The HCFA disallowed FFP to Sharmar from November 1973 to September 1974.

The Board agreed that Colorado state law extended provider agreements until final judicial review under state law but it limited federal payments to a period of 12 months. This period begins to run from the date an agreement would have been terminated had the state decision been immediately effective. Colorado Department of Social Services, Decision No. 187 at 22. In reaching this decision the Board referred to an opinion it reached a month earlier in Ohio Department of Public Welfare, Decision No. 173. The Board conceded that "[n]either the Social Security Act nor the regulations in effect during the periods in question explicitly address the subject of the availability of FFP during the time when providers are seeking to obtain administrative or judicial review of decisions to terminate or not renew their participation in the Medicaid program." *Colorado*, Decision No. 187 at 4–5. In the absence of a specific regulation to interpret the Board justified the 12-month limit by looking to 42 C.F.R. § 442.15 and the Medicaid certification scheme as a whole. The Board found that:

> "[T]he purpose of re-executing provider agreements on a frequency of 12 months or less is not to give new life to a perennial record-keeping requirement, but to reinforce the pattern of surveying facilities at least once a year."

*Colorado*, Decision No. 187, quoting *Ohio*, Decision No. 173 at 8.

The United States District Court upheld the Board's action by finding it applied a rule which "had always been implied" in Program Regulation Guide 11. PRG–11 is found in a published and circulated Health and Human Services Medical Assistance Manual which explains the regulations promulgated by Health and Human Services to administer Title XIX. It is not a formal regulation in itself. The district court categorized the limit first announced by the Board in *Ohio* and applied to Colorado cases as an "interpretive rule." It supported the Board's power to make a rule in this manner by looking to the principles established by *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947), and applied in *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 293, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974).

We do not consider it necessary to discuss or apply the doctrines related to the discretion of administrative agencies to proceed under rulemaking or adjudication. The Board here concerned was created to adjudicate disputes. It had before it the review taken by Colorado from the disallowance by the Department of Health and Human Services. Other states had sought the same review in other cases. It was thus considering the particular case of Colorado. It adjudicated the matter using as a precedent the earlier Ohio case. It resolved the dispute as to the continuation of

the federal share by a construction of the rules and regulations with the all pervading one-year limitation on provider agreements. (42 C.F.R. § 442.15(a) (1984).)

We do not consider the action of the Board in resolving the dispute with the application of the 12-month limit as anything more than a typical construction of agency regulations by an entity with jurisdiction to consider and to decide the dispute. It appears that the Board acted within its powers and exercised its discretion in a proper manner. We agree with the trial court that the action was in conformity with law and was not arbitrary, capricious nor an abuse of discretion. The fact that the result had a retroactive effect is not unusual nor prohibited in adjudications.

The Program Regulation Guide 11 is referred to above. It states in part:

"When a facility appeals the termination of its provider agreement, Federal financial participation is not available for payments to the facility during the appeal, since the facility does not have a currently effective provider agreement. The fact that the facility formerly had a provider agreement gives no basis for Federal financial participation in payments to the facility for the period while the appeal is before the administrative agencies or the courts. If, however, State law provides for continued validity of the provider agreement pending appeal, or if the facility is upheld on appeal and State law provides for retroactive reinstatement of the agreement, the agreement would not be considered terminated during the appeal period for purposes of Federal financial participation for payments to the facility."

The Guide thus indicates that federal assistance will continue during appeals under certain circumstances. The Colorado laws in substance do provide for the "continuing validity" of the provider agreement. The Board thus added to the PRG-11 the proviso that the federal sharing shall continue only for the 12-month period limiting provider agreements and would not continue it indefinitely during the litigation.

■ The Sixth Circuit in *State Department of Human Services v. Secretary of Health and Human Services*, 744 F.2d 32 (6th Cir.1984), upheld the addition of the time limitation to PRG-11 as a reasonable interpretation. It also rejected the retroactive arguments. The court added:

"Title XIX of the Social Security Act and implementing regulations authorize federal participation in payments to facilities only if the facilities are duly certified. The record shows that for the period of the disallowances in the present case, none of the facilities in question was certified by the State as meeting federal health and safety standards required for Medicaid participation."

We agree with the position taken by the Sixth Circuit that the limitation is a reasonable interpretation of PRG-11 in view of the basic limitation on the length of provider agreements and the requirement for certification annually.

AFFIRMED.