169 N.J. Super. 72 (1979)
404 A.2d 318
BLANCA LEPIANI, APPELLANT,
v.
BOARD OF REVIEW, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY AND NEKO TOGS, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1979.
Decided June 7, 1979.
*73 Before Judges CONFORD, PRESSLER and KING.
Ms. Madeline L. Houston argued the cause for the appellant (Passaic County Legal Aid Society).
Mr. Michael R. Clancy argued the cause for the respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. Michael S. Bokar, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Claimant Blanca Lepiani appeals from a determination of the Appeal Tribunal, concurred in by the Board of Review, concluding that she was ineligible for unemployment compensation benefits on the ground of her unavailability for work within the intendment of N.J.S.A. *74 43:21-4(c). The finding of unavailability was based upon her status as an alien not authorized to be gainfully employed.
In Bastas v. Board of Review, 155 N.J. Super. 312 (App. Div. 1978), this court held that aliens having a nonimmigrant status without employment authorization are disqualified by reason of the above-cited statute from obtaining unemployment benefits. And see Pinilla v. Board of Review, 155 N.J. Super. 307 (App. Div. 1978). The claimant here, however, contends that she is exempt from that holding because of the peculiar factual complex affecting her alien status.
Lepiani, a Peruvian national, entered the United States as a temporary visitor for pleasure in 1973. As such she was prohibited from engaging in employment by 8 U.S.C.A. § 1101(a) (15) (B). She nevertheless obtained a Social Security card shortly after her arrival and has been employed on a regular basis since. In January 1975 she commenced employment with Neko Togs and worked there until August 1976 when she was laid off. She was apparently reemployed by that firm in January 1977 but was again laid off in April of that year. This matter thus involves her claim for benefits for the period of August 16, 1976 through January 16, 1977 and April 4, 1977 through April 24, 1977.
Claimant was first authorized to work by the Immigration and Naturalization Service of the United States Department of Justice (INS) on April 21, 1977 and subsequently was accorded immigrant status with all of its attendant rights. The nub of her argument is that but for legal error by INS, she would have achieved her immigrant status prior to January 1977. She is apparently correct in this contention. She had in fact been accorded an immigration visa priority date in 1974 but had not obtained such a visa as of January 1977 because the number of visa applications from Western Hemisphere nationals greatly exceeded the Western Hemisphere immigration quota during the periods here in question. A primary reason for this excessive demand was the INS understanding that federal legislation providing for emergency entry into the United States of *75 Cuban nationals required that the visas granted to those immigrants be charged against the regular Western Hemisphere quota.[1] In a class action brought in the federal district court for the Northern District of Illinois, encaptioned Silva v. Levi, Docket No. 76 C 4268 (N.D. Ill. 1977), it was held that that statutory construction by INS was erroneous; that the Cuban immigration was not intended by Congress to have been charged against the Western Hemisphere quota; and that some nearly 150,000 visas accorded to Cuban immigrants should actually have been available for other Western Hemisphere applicants. Claimant's April 21, 1977 work authorization was a direct consequence of the Silva suit.
We do not, however, agree with claimant that this circumstance relieves her of the Basta and Pinella disqualification except in respect of the last three days of the unemployment period which is the subject of this claim. However sympathetic her personal situation may be, the fact nevertheless remains that until she was duly authorized to work by INS her alien status, of which she was well aware, precluded her legal employment. There is nothing in this record to suggest any intention by either INS or the federal court to accord a retrospective employment authorization to aliens in the Silva class. Their remedial intention rather was to recompense the members of the class by refraining from deporting those of them who had been illegally employed while awaiting visa allocation and by expediting their immigrant status. The remedial steps, therefore, which were ordered by the Silva court and implemented by INS did not purport to make legal past conduct which was illegal but only prospectively to immunize that class from the deportation consequence of the illegal conduct. See 8 U.S.C.A. § 1251 (a) (9). And see, as to the deportation consequence *76 of illegal employment, Ojeda-Vinales v. Immigration and Naturalization Service, 523 F.2d 286, 288 (2 Cir.1975).
In short, the Immigration and Naturalization Act is administered by INS. Other agencies, both state and federal, must be able to rely on the actions of INS. Those aggrieved by those actions have legitimate and prescribed methods of seeking recourse therefrom. Simply ignoring INS action and proceeding in violation thereof is not one of them even if one is subsequently vindicated in his legal position. The fact thus remains that in respect of the period for which benefits are here sought, except for the last three days thereof, claimant was not qualified to work, had neither sought nor obtained INS work authorization and was, therefore, not available for work within statutory intendment.
The judgment appealed from is modified so as to entitle claimant to benefits for the period April 21, 1977 to April 24, 1977, and as modified, the judgment is affirmed.
NOTES
[1] See the Cuban Adjustment Act, Pub. L. 89-732, 80 Stat. 1161 (1966). The Western Hemisphere quota was, since July 1968, 120,000 visas a year. 8 U.S.C.A. § 1151 (a).