## No. 79SA96

**Luis Duenas-Rodriguez v. The Industrial Commission of the State of Colorado, Ex-Officio Unemployment Compensation Commission of Colorado, and Colorado State Division of Employment and Training**

(606 P.2d 437)

Decided January 21, 1980.     Opinion modified and as modified rehearing denied February 25, 1980.

Henry C. Frey, for petitioner-appellant.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Ann Sayvetz, Assistant Attorney General, Human Resources Section, for respondents-appellees.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

This is an appeal from an order of the Industrial Commission of the State of Colorado holding that appellant, Luis Duenas-Rodriguez, was overpaid $2,242 in unemployment compensation benefits. During the time appellant received those benefits, from January 7, 1975, through January 1, 1977, he was illegally residing in the United States.

At the hearing, the referee for the Colorado Department of Labor and Employment, Division of Employment and Training, heard evidence and held that because of appellant's illegal alien status he was not legally "available for work" during that period. The Industrial Commission agreed, and ordered that the overpayment be offset against future benefits for which appellant may become eligible.[1] We affirm the order of the Commission.

## I.

Appellant argues that he was entitled to receive the unemployment benefits at issue here since, during the time he received them, there was no federal or state law prohibiting receipt of unemployment benefits by illegal aliens.[2] Such law did not come into effect in Colorado until July 7, 1977.[3]

Although no specific statute prohibiting the payment of unemployment compensation benefits to illegal aliens existed at the time appellant collected such benefits, appellant did not necessarily qualify for benefits. Section 8-73-107(1)(c), C.R.S. 1973, required that, to qualify for unemployment benefits, an applicant be "available for all work . . . ."

A determination of an individual's availability for employment "is one for which an all-inclusive rule cannot be stated, but rather must be made within the context of the factual situation presented by each case." *Couchman v. Indust. Comm.*, 33 Colo. App. 116, 515 P.2d 636 (1973). The burden of proof is on the employee to establish eligibility for unemployment benefits. *Denver Symph. Ass'n v. Indust. Comm.*, 34 Colo. App. 343, 526 P.2d 685 (1974).

---

[1] In February 1977, appellant married a United States citizen and became a resident alien, entitled to collect unemployment compensation benefits. On appeal, the Commission concedes that appellant became legally available for work in February 1977, and thus is entitled to reduce the $2,242 overpayment by $190, the amount of benefits he received in February 1977. The Commission now submits that its final order requiring an offset of $2,242 should be modified to require an offset of $2,052.

[2] *But see,* 8 C.F.R. § 214.1(c) (1975) & (1976), providing that a nonimmigrant "may not engage in any employment unless he has been accorded a nonimmigrant classification which authorizes employment or he has been granted permission to engage in employment . . . ."

[3] Section 8-73-107(7), C.R.S. 1973 (1978 Supp.), prohibiting the payment of unemployment benefits to aliens not lawfully admitted for permanent residence in the United States. This amendment was in response to the Federal Unemployment Tax Act, 26 U.S.C. § 3304(a)(14)(A) (1976) (effective "with respect to certifications of States for 1978 and subsequent years . . . ." 26 U.S.C. § 3304(a)(14)(A), at p. 886).

Appellant testified that he entered this country eight or nine years prior to commencement of this action in 1978. He married a United States citizen in November 1976, and in January 1977 he received his alien registration card, permitting him to remain in this country and authorizing his employment here. Until that time, however, he was here illegally.

Appellant contends that his illegal status is irrelevant to the issue of availability for work, and that the only question is whether, at the time he collected the benefits, he was physically able to work. Since he was physically capable of working, appellant asserts that he was qualified to receive benefits under section 8-73-107(1)(c).

The courts have consistently held that aliens who enter the United States on nonimmigrant visas and aliens who enter illegally have no constitutional right to work. *See Pilapil v. Immigration and Naturalization Service*, 424 F.2d 6 (10th Cir. 1970); *Ojeda-Vinales v. Immigration & Naturalization Serv.*, 523 F.2d 286 (2d. Cir. 1975); *Zapata v. Levine*, 50 App. Div. 2d 681, 375 N.Y.S.2d 424 (1975). An illegal alien is also subject to deportation. 8 U.S.C. § 1251 (1976).

Such an individual is legally unable to work,[4] and "legal inability to work is as disqualifying as physical inability to work." *Pinilla v. Bd. of Rev. In Dept. of L. & I.*, 155 N.J. Super. 307, 382 A.2d 921 (1978). *Accord, Alonso v. State*, 50 Cal. App. 3d 242, 123 Cal. Rptr. 536 (1975), *cert. denied* 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976); *Zapata v. Levine, supra. See* Annot., 87 A.L.R.3d 694 (1978). Thus, appellant, who was legally unavailable for work, did not qualify for benefits under section 8-73-107(1)(c).

In addressing the issue before us — whether an illegal alien is entitled to unemployment compensation benefits — the California Court of Appeals concluded that

"[t]o allow an illegal alien to collect unemployment benefits would reward him for his illegal entry into this county. In essence, his entry into this country is fraudulent, and as such he should not be allowed to profit from the illegal act." *Alonso v. State, supra.* We agree with this reasoning.

## II.

Appellant also challenges the Industrial Commission's conclusion that it would not be against equity and good conscience to offset the amount he was held to have been overpaid ($2,242) against future unemployment benefits to which he might become entitled.[5]

The authority of the Commission to collect sums paid to individuals who were not entitled to such payments is defined in section 8-81-101(4)(a), C.R.S. 1973. The statute reads in pertinent part:

---

[4] *See* 8 C.F.R. § 214.1(c) (1976); 26 U.S.C. § 3306(c)(18) (1976), Unemployment Tax Act.
[5] *But see* footnote 1.

"Any person who has received any sum as benefits under articles 70 to 82 of this title to which he was not entitled other than by reason of his false representation or willful failure to disclose a material fact, if so found by the division, shall be liable to repay such amount to the division for the fund or to have future benefits to which he may become entitled cancelled to offset such overpayment if such recovery would not, in the opinion of the division, be *against equity and good conscience*. The division may waive the recovery or adjustment of all or part of the amount of any such overpayment which it finds to be noncollectible, or the recovery or adjustment of which it finds to be administratively impracticable." (Emphasis added.)

When appellant initially claimed unemployment benefits, he was assisted in filling out the forms by another applicant. Appellant does not speak or write English. The man who assisted him did not ask if appellant was a United States citizen, but merely checked the box on the application form indicating that appellant was a citizen. It was not until appellant reapplied for benefits in 1977 that he was requested to submit evidence of citizenship, which he was unable to do.

After hearing testimony, the referee found that appellant did not willfully misrepresent his citizenship status, and thus should not be subject to a 10% penalty. The referee held, however, that the $2,242 in benefits received by appellant must be repaid.

The Industrial Commission agreed that imposition of a penalty in this case would be inappropriate. It also concluded, after reviewing all the evidence, that "it would be against equity and good conscience to require repayment by the claimant, but that it would not be against equity and good conscience to offset the overpayment against future benefits to which the claimant may become eligible."

■ The phrase "equity and good conscience" is "an elastic expression . . . ." *City of Leadville v. Sewer Co.*, 47 Colo. 118, 107 P. 801 (1909) (Gabbert, J., dissenting). This same statutory phrase has been held to be "language of unusual generality" which "anticipate[s] that the trier of fact, instead of attempting to channelize his decision within rigid and specific rules, will draw upon precepts of justice and morality as the basis for his ruling." *Gilles v. Department of Human Resources Develop.*, 11 Cal. 3d 313, 521 P.2d 110, 113 Cal. Rptr. 374 (1974) (discussing language in the Unemployment Insurance Code of California).

It was there noted that the reference to "equity and good conscience" has its probable source in section 204 of the Social Security Act, 42 U.S.C. § 404 (1974). For purposes of that act, the phrase is defined in 20 C.F.R. 404.509 (1979):

"'Against equity and good conscience' means that adjustment or recovery of an incorrect payment . . . will be considered inequitable if an individual, because of a notice that such payment would be made or by

reason of the incorrect payment, relinquished a valuable right . . . or changed his position for the worse . . . . In reaching such a determination, the individual's financial circumstances are irrelevant."

Although we are not bound by that definition, we consider it indicative of the generally understood meaning of "equity and good conscience."

In the case here before us, appellant presented no evidence that he relinquished any valuable right or changed his position for the worse because he received unemployment benefits. Indeed, as an illegal alien, he was not legally entitled to work in this country at the time he was receiving benefits to compensate him for being unemployed. We find no equitable reason for allowing appellant to avoid future setoffs, as ordered by the Commission.

### III.

Appellant finally argues that section 8-81-101(4)(a), C.R.S. 1973, is unconstitutional in that the Industrial Commission had not promulgated rules and regulations to spell out what standards and considerations are to be applied in deciding whether it would be against equity and good conscience to recover unemployment benefits where such benefits are found to have been overpaid. Appellant relies on *Elizondo v. Motor Veh. Div.*, 194 Colo. 113, 570 P.2d 518 (1977).

In *Elizondo,* the court held that section 42-2-123(11), C.R.S. 1973, providing for probationary drivers' licenses, was unconstitutional as applied by the Department of Revenue, Motor Vehicle Division. The statute authorizes the division to adopt specific rules and regulations to limit the exercise of discretion by individual hearing officers in granting or denying probationary drivers' licenses. The division had failed to promulgate such rules.

The rationale in *Elizondo* is not applicable to section 8-81-101(4)(a). The General Assembly did provide guidelines for application of the penalty provisions of that statute. The Commission was directed to apply the principles of equity in determining whether improperly paid benefits were to be repaid or set off against future benefits.

The Commission is not required to take evidence in addition to that taken by the referee, but may base its decision "on the basis of the evidence previously submitted in such case. . . ." Section 8-74-105, C.R.S. 1973. The order of the Commission was issued after it had "reviewed the entire file," including all the evidence presented at the hearing before the referee. Based on that record, the Commission applied the principles of equity and good conscience in reaching its decision. We find ample evidence to support that decision. *See Allmendinger v. Industrial Comm.*, 40 Colo. App. 210, 571 P.2d 741 (1977); *Morrison Bar v. Ind. Comm.*, 138 Colo. 16, 328 P.2d 1076 (1958); *Ward & Co. v. Industrial Comm.*, 128 Colo. 465, 263 P.2d 817 (1953).

The cause is remanded to the Industrial Commission with directions to reduce the offset by $190, to $2,052. In all other respects, the order is affirmed.