Josefita P. HESSON, Petitioner,

v.

The INDUSTRIAL COMMISSION OF the STATE of Colorado; Division of Employment and Training; Colorado Department of Labor and Employment; and Great West Life Assurance Co., Respondents.

No. 86CA0380.

Colorado Court of Appeals, Div. III.

June 4, 1987.

Linda J. Olson, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dani R. Newsum, Asst. Atty. Gen., Denver, for respondents Industrial Com'n and Div. of Employment and Training.

No appearance for respondent Great West Life Assurance Co.

CRISWELL, Judge.

Claimant, Josefita P. Hesson, seeks review of a final order of the Industrial Commission (Commission) finding that she was not entitled to a waiver of her obligation to repay the unemployment compensation benefits she had been overpaid. We set aside the order and remand for a new hearing.

Claimant was involved in an automobile accident in April 1983, as a result of which she was absent from her employment on several occasions thereafter. This led her employer to terminate her employment in late May of that year.

In June 1983, claimant filed her claim for unemployment compensation benefits with the Division of Employment (Division), and in early July her employer was mailed a notice advising it that it had 12 calendar days within which to protest her claim. *See* § 8–74–102, C.R.S. (1986 Repl.Vol. 3B). For reasons not apparent from the record, no protest was filed by the employer at that time. The parties agree that, as a result, commencing in July 1983 and terminating in March 1984, claimant received unemployment benefits amounting to approximately $3,800, that being the maximum amount of benefits to which she would have been entitled.

On July 30, 1984—more than 13 months after claimant's initial claim had been filed and more than 4 months after she had received her last benefit payment—a second notice of the filing of her claim was sent to her employer. While the record before us fails to explain the precise reason for the mailing of this second notice, or upon whose authority such action was taken, it does reflect that this second notice was sent to a different address than was the first notice. The record, however, contains no indication that claimant was given any notice of the mailing of this second notice.

In August 1984, the employer filed a written protest to claimant's claim, but there is no indication in the record that a copy of this protest was provided to claimant. On September 17, 1984, a deputy of the Division rejected this protest and rendered a written decision that claimant was entitled to a full award. That decision was appealed to a referee before whom a hearing was held in October 1984.

The transcript of this hearing was not made a part of the record before us. Hence, there is no indication in this record whether the issue of the timeliness of the employer's belated protest was raised at, or prior to, this initial hearing; the referee's decision makes no reference to any such issue.

On November 1, 1984, the referee rendered his written decision, granting to claimant "a full award of benefits." How-

ever, he also found that, because of the injuries resulting to claimant from the automobile accident, claimant was not available for work commencing as of June 26, 1983 (the date she filed her initial claim). Accordingly, the referee ruled she should "be disallowed receipt of unemployment insurance benefits" effective as of that date and continuing until claimant produced a competent medical opinion certifying that she was able and available for work.

Claimant asserts that both she and her attorney were confused by this order and that both considered that she had "won." Consequently, she did not appeal this decision to the Commission.

In January 1985, the Division advised claimant of her liability for the overpayment of benefits, and she filed a request for a waiver of repayment under § 8–81–101(4), C.R.S. (1986 Repl.Vol. 3B). At the hearing upon her request, the foregoing administrative history was reviewed and, in addition, claimant testified that she had insufficient assets or income with which to repay the claimed overpayment. She did not, however, present any direct testimony that she had waived any right or changed her position as a result of her previous receipt of benefits.

The referee denied claimant's waiver request. He did not delineate the bases for his decision, but merely stated that, based upon claimant's testimony, he could not grant such waiver.

On claimant's appeal to it, the Commission concluded that claimant's financial ability to repay was irrelevant; that the referee's decision was based upon equitable considerations; and that the referee did not abuse his discretion in concluding that it would not be "inequitable" to require claimant to repay the benefits previously received by her.

In reaching its conclusions, the Commission relied upon the definition of the phrase, "against equity and good conscience," contained within 20 C.F.R. § 404.-509 (1986). However, we conclude that this may have been an inappropriate standard by which to judge claimant's request.

Section 8–81–101(4), C.R.S. (1986 Repl. Vol. 3B), authorizes the Division to waive any repayment of an overpayment of benefits if it determines that such repayment would be "inequitable," or if it finds that such overpayment, or any part thereof, is "uncollectible" or that its collection would be "administratively impracticable." The word, "inequitable," was substituted in the statute for the prior phrase, "against equity and good conscience," in 1979. See Colo.Sess.Laws 1979, ch. 67 at 355. In *Mugrauer v. Industrial Commission*, 709 P.2d 47 (Colo.App.1985), however, a division of this court held that the change in the wording of the statute caused no substantive change in its meaning.

The supreme court, in *Duenas-Rodriquez v. Industrial Commission*, 199 Colo. 95, 606 P.2d 437 (1980), has noted the similarity between the prior statutory phrase and similar language used in the federal Social Security Act's provisions for the waiver of repayment of improperly paid social security benefits. See 42 U.S.C. § 404(b) (1982). Under the federal act, the overpayment must have been through no fault on the recipient's part, 42 U.S.C. § 404(b) (1982), and, under the state statute, not a result of a "false representation or willful failure to disclose a material fact," § 8–81–101(4)(a)(II), in order for repayment to be waived.

In *Duenas*, the supreme court recognized that the statutory reference to equity constituted an elastic expression, and one of unusual generality. Noting that the regulations were not binding upon the Colorado courts, the court in *Duenas* nevertheless suggested that the administrative definition of the federal statutory term, found at 20 C.F.R. § 404.509 (1986), is *"indicative"* of the meaning of the statutory phrase. (emphasis supplied) Under that federal definition, in order for a waiver of repayment of improperly received benefits to be granted, the recipient must show either that he relinquished a valuable right or that he changed his position in reliance upon his entitlement to the benefits received.

The federal regulation also provides that "the individual's financial circumstances are irrelevant" to the determination of whether repayment would be inequitable. The *Duenas* court made no specific comment upon this portion of the regulation, however. Moreover, nothing in *Duenas* would compel the conclusion that a relinquishment of a valuable right or a change of position in reliance upon the receipt of benefits is an indispensable element of inequity in every case.

*Mugrauer v. Industrial Commission, supra,* might be construed as having interpreted *Duenas* to require that the language of the state statute carry with it the same meaning ascribed to the language of the federal act by the federal regulation. We do not so interpret *Mugrauer.*

*Mugrauer* itself recognizes that the change of position necessary under the federal regulation need not be striking. Testimony that, absent receipt of the benefits, the claimant would have expanded his attempts to find employment or further limited his expenses can be considered to be a sufficient change in position to render it inequitable to require repayment under *Mugrauer.*

Here, had the employer filed its protest within the statutory period authorized therefor, claimant would either have never received any of the benefits paid to her or, if payments had been authorized by the deputy, a referee's decision would have been rendered long prior to claimant's receipt of her maximum benefits. At the very least, then, had the statutory time limits been observed, the *amount* of any overpayment to claimant would have been substantially less than the amount actually received by her.

Further, claimant had the legal right to rely upon the fact that, if the employer entertained any objection to her receipt of benefits, a proper protest would be filed within the time required by § 8–74–102. There being no protest filed within this period, claimant had the right to rely upon the proposition that there was no legal impediment to her receipt of the benefits and, hence, no realistic reason for her to suppose that she would ever be called upon to repay any portion of them.

Finally, while there was no direct testimony that claimant changed her position in reliance upon her lawful receipt of benefits, and while a claimant's financial condition may, standing alone, be insufficient to establish the inequitability required to be shown, the fact that a claimant's financial condition has required the benefits received to be spent for living expenses may be considered upon this issue, even under the federal regulation. *See Frasier v. Harris,* 495 F.Supp. 260 (D.Colo.1980); *Woods v. Gardner,* 286 F.Supp. 648 (W.D.Pa.1968). Certainly, claimant's financial situation cannot be deemed to be irrelevant to a determination of the statutory issues whether the payments are "uncollectible" or whether collection is "administratively impracticable."

■ Accordingly, under the circumstances at issue, in which the employer failed to protest claimant's receipt of unemployment compensation benefits until the maximum allowable benefits were paid to her, with the result being that claimant received no notice until after receipt of all such benefits that repayment might subsequently be ordered, and in which claimant's limited financial resources have required the benefits received to be used for living expenses, a determination that it would be inequitable to require repayment of those benefits would, in our view, properly be within the discretion of the Commission.

■ The record demonstrates, however, that the Commission considered itself bound by the federal definition of the pertinent term. Likewise, it appears that the hearing officer, as well as some of the parties, may have considered the factors described in the federal regulation to be the only relevant factors. Accordingly, since we conclude that the federal regulation is not the sole means by which inequity under the state statute may be measured, the matter must be remanded for a new evidentiary hearing.

The order of the Commission is set aside, and this matter is remanded to the Indus-

trial Claim Appeals Office with directions to conduct a new hearing upon claimant's request for waiver and, thereafter, to reconsider the merits of her request for waiver consistent with the views expressed herein.

VAN CISE and STERNBERG, JJ., concur.