Argued and submitted September 8, 1986, reversed and remanded for reconsideration November 12, 1987

CARILLO,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION,
*Respondent.*

(EAB 85-AB-1632; CA A38157)

744 P2d 1304

D. Michael Dale, Ontario, argued the cause for petitioner. On the brief was Peter Fels, Oregon Legal Services Corp., Pendleton.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

**BUTTLER, P. J.**

Petitioner seeks judicial review of a final order of the Employment Appeals Board determining that she is not entitled to unemployment benefits because she does not have an immigrant visa or work authorization from the Immigration and Naturalization Service (INS) and is, therefore, "unavailable" for work. We reverse.

Petitioner entered the United States from Mexico in 1975. She did not have any type of visa. She was employed in Hermiston by the J.R. Simplot Company from June, 1978, until June, 1984, when she was discharged, pursuant to a new company policy, because she could not provide proof of INS work authorization. She had applied for work authorization in 1982, but INS had told her that she was subject to deportation. INS has yet to make a final determination of her status.

The Employment Division (Division) denied petitioner benefits on the ground that her failure to provide work authorization constituted misconduct under ORS 657.176(2)(a). After a hearing, the referee ruled that her failure to provide work authorization was not misconduct and allowed benefits. The Division then denied benefits on the basis that petitioner was "unavailable" for work within the meaning of ORS 657.155(1)(c), which provides:

> "(1)  An unemployed individual shall be eligible to receive benefits with respect to any week only if the assistant director finds that:
>
> "* * * * *
>
> "(c)  The individual is able to work, is available for work, and is actively seeking and unable to obtain suitable work."

The referee again reversed, determining that petitioner was available for work. EAB reversed the referee, holding that, as a matter of law, petitioner could not be available for work within the meaning of ORS 657.155(1)(c). EAB stated that "[t]he vagaries of the claimant's labor market area and the investigation made into the job possibilities in the labor market area could not change the outcome of this case." The Board noted that "we are loathe to hold that an illegal worker should be allowed unemployment insurance benefits."

The statutory phrase "available for work," ORS 657.155(1)(c), is defined in OAR 471-30-036(3):

"For the purposes of determining whether or not an individual is available for work under the provisions of ORS 657.155(1)(c), the Administrator shall require at a minimum that the individual

"(a)  Be willing to work full time during all of the usual hours and days of the week customary for the work being sought pursuant to section (1) of this rule.

"(b)  Be reasonably accessible to any suitable work opportunities within the labor market in which work is being sought pursuant to section (1) of this rule, including any temporary work opportunities that are otherwise suitable unless such temporary work will bar or interfere with return to the individual's regular employment.

"(c)  Has not imposed conditions which substantially reduce the individual's labor market attachment.

"(d)  Be in the normal labor market (as established under section (5) of this rule) every day of the customary work week for the type of work being sought pursuant to section 1 of this rule, unless the individual is actively seeking work elsewhere. However, absence from the normal labor market due to an infrequent circumstance, other than work search, for less than the major portion of the customary work week, shall not result in a finding that the individual is unavailable for work for the week."

That definition does not contain a requirement that immigrants have INS work authorizations before they may be considered to be available for work, thereby making them eligible for unemployment benefits. The only alienage-based restriction on unemployment benefits is found in ORS 657.184:

"Benefits shall not be paid on the basis of services performed by an alien unless such alien is an individual who has been lawfully admitted to the United States for permanent residence or to perform such services, or otherwise is permanently residing in the United States under color of law, including an alien who is lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act."

The Division concedes that petitioner is in the country "under color of law." *See Gillar v. Employment Division,* 300 Or 672, 717 P2d 131 (1986).

At the time of petitioner's claim, there were no

federal laws prohibiting the employment of undocumented aliens.[1] Congress had not made it a criminal offense for an alien to accept employment after entering this country illegally. The United States Supreme Court has pointed out that, at the relevant time, the only federal rules regarding employment of aliens were those promulgated by INS under its authority to control immigration:

> "For whatever reason, Congress has not adopted provisions in the INA making it unlawful for an employer to hire an alien who is present or working in the United States without appropriate authorization. While it is unlawful to 'concea[l], harbo[r], or shiel[d] from detection' any alien not lawfully entitled to enter or reside in the United States, see 8 USC § 1324(a)(3), an explicit proviso to the statute explains that 'employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.' *Ibid.* See *De Canas v. Bica, supra,* at 360, and n 9. Moreover, Congress has not made it a separate criminal offense for an alien to accept employment after entering this country illegally. See 119 Cong Rec 14184 (1973) (remarks of Rep. Dennis). Since the employment relationship between an employer and an undocumented alien is hence not illegal under the INA, there is no reason to conclude that application of the NLRA to employment practices affecting such aliens would necessarily conflict with the terms of the INA." *Sure-Tan, Inc. v. NLRB,* 467 US 883, 892, 104 S Ct 2803, 81 L Ed 2d 732 (1984).

Although it was not "illegal" for an undocumented alien to work or for an employer to hire one, the INS rules subjected an alien to deportation for failure to abide by the terms of a visa or, of course, for not having a visa. 8 USC § 1251(a)(9) (1986); 8 CFR § 109.1, § 214.1(e) (1986).

Under Oregon law, there is only one situation, concededly not present here, in which it is unlawful to hire an undocumented worker: Farm labor contractors are forbidden from knowingly employing an alien "not legally present or legally employable in the United States." ORS 658.440(2)(d). Otherwise, employers are free to hire undocumented workers who are permanently residing in this county under color of

---

[1] On November 6, 1986, the Immigration Reform and Control Act of 1986, Pub L No. 99-603, was signed into law. The act makes it unlawful for employers to hire undocumented aliens, but it does not apply to aliens who were hired before the act became law.

law, and those workers are not subject to any criminal sanction for accepting employment.

The Division argues that the lack of criminal sanctions relating to the employment of undocumented aliens is irrelevant. It urges that the fact that the aliens lack temporary work authorizations from the INS makes them unavailable. Some states have taken that position.[2] Petitioner, on the other hand, argues that INS authorization is irrelevant to her availability for work. She points to the fact that she had been able in the past to obtain a job without having authorization and that she was again employed at the time of her hearing. She argues that she is "available for work" if she satisfies the criteria of OAR 471-30-036(3).

We agree with petitioner. In essence, EAB has defined "available" for aliens to mean "having INS work authorization." The Division has the authority to define availability, *Doctor v. Employment Division,* 76 Or App 650, 711 P2d 159 (1985), *rev den* 300 Or 704 (1986), and has done so in OAR 471-30-036, *supra.* Although EAB purported to be applying that rule, in doing so, it rewrote it or attempted to write a new rule through adjudication. EAB may make procedural rules for the conduct of its own proceedings, ORS 657.685(7), but it has no substantive rulemaking authority. *Trebesch v. Employment Division,* 300 Or 264, 710 P2d 136 (1985). EAB did more than make merely procedural rules here. It adopted a substantive policy that affects a certain group's access to benefits. In doing so, it exceeded its authority and thereby applied an erroneous rule of law.

Reversed and remanded for reconsideration.

**ROSSMAN, J.,** dissenting.

This is a close case with competing policy considerations. The majority opinion is strong and well-reasoned on the administrative law issue. However, because I agree with the weight of authority on this subject, I respectfully dissent.

---

[2] *Alonso v. State,* 50 Cal App 3d 242, 123 Cal Rptr 536 (1975), *cert den* 424 US 903 (1976); *Duenas-Rodriguez v. Industrial Com'n.,* 199 Colo 95, 606 P2d 437 (1980); *Alfred v. Fla. Dept. of Labor & Employ. Sec.,* 487 So 2d 355 (Fla App 1986); *Lepiani v. Bd. of R., Dept. of Labor and Indus.,* 169 NJ Super 72, 404 A2d 318 (1979); *Zapata v. Levine,* 50 App Div 2d 681, 375 NYS2d 424 (1975). *But see Vespremi v. Giles,* 68 Ohio App 2d 91, 427 NE2d 30 (1980).

## LEGAL AVAILABILITY

The majority correctly states that neither ORS 657.155(1)(c) nor OAR 471-30-036(3) explicitly defines alien availability for work in terms of an Immigration and Naturalization Service (INS) authorization. However, I believe that the Division is correct that the term "available for work" implies *legal* availability for work. The statutory and regulatory standard for availability necessarily implies that employment not violate state law or federal regulations, and the Division need not issue such a rule. The legal availability requirement has application to more than aliens, of course. For example, ORS 653.320 bars children under age 14 from employment while school is in session. If ORS 657.155(1)(c) and OAR 471-30-036(3) do not contain a legal availability requirement, the Division must pay benefits to a child who has worked in violation of the statute.

Since November 7, 1986, it has been unlawful for an employer to hire an alien who is not authorized to work by the INS. 8 USC § 1324a, as amended by P.L. 99-603, Title I, Part A § 101(a)(1), 100 Stat 3360; *see also* 8 CFR 274a & b, *as amended* 52 FR 16216. Before then, it was illegal for many aliens present under color of law to be employed in this country. Federal law controlled whether certain classes of aliens could be employed at all and closely regulated what employment some classes of aliens could accept. *See* 8 CFR 109, 214.1(e)(1986). For example, an employed alien who entered on a non-immigrant visa under the classification of temporary presence for pleasure was present under color of law but working illegally. 8 CFR 214.1(e).

The majority correctly states one holding of *Sure-Tan, Inc. v. NLRB*, 467 US 883, 104 S Ct 2803, 81 L Ed 2d 732 (1984), that it was not illegal for an *employer* to hire undocumented aliens. However, the Supreme Court acknowledged that such employment could be illegal for the *alien*. The majority fails to recognize the significance of the distinction. In *Sure-Tan*, the employer reported undocumented alien employes to INS in retaliation for their participation in union activities. The employes were then deported. 467 US at 886-890. The court held that undocumented alien employes were protected by the National Labor Relations Act (NLRA) and that the employer's retaliation was therefore unlawful.

467 US at 893-894, 896. The court based its holding in part on the fact that it was not illegal for an employer to hire an undocumented alien. 467 US at 893.

A standard remedy for the constructive or actual discharge of an employee for union activity is reinstatement with back pay. The United States Court of Appeals saw problems with that remedy under the *Sure-Tan* facts, recognizing that the undocumented alien employees were "not lawfully available for employment." The Court of Appeals awarded back pay anyway. 467 US at 890. The Supreme Court reversed the back pay award, stating:

> "[T]he employees must be deemed 'unavailable' for work (and the accrual of back pay therefore tolled) during any period when they were not lawfully entitled to be present and employed in the United States." 467 US at 903.

The aliens in *Sure-Tan* were not lawfully available for work for purposes of back pay and reinstatement, and I believe that it would be irrational to hold that aliens who worked contrary to the terms of their visa or otherwise in violation of federal regulations are "available" for work under ORS 657.155(1)(c) and OAR 471-30-036(3).

## WORK AUTHORIZATION

The question becomes, therefore, how to determine which aliens are legally available for work and which are not. I agree with the weight of authority, which holds that the presence or absence of INS work authorization resolves that question. Of the seven jurisdictions to consider the issue, five have held that aliens without work authorization are not "available" for work under their unemployment compensation laws. In a recent case, the Florida District Court of Appeals denied compensation to aliens who had worked under INS authorizations but whose authorizations were revoked after their applications for unemployment benefits. The court held that the aliens were no longer "able and available" for work. *Alfred v. Florida Department of Labor*, 487 So 2d 355 (Fla App 1986). California, Colorado, New Jersey, and New York have also held such aliens to be unavailable for work. *Alonso v. State*, 50 Cal App 3d 242, 123 Cal Rptr 536 (1975), *cert den* 425 US 903 (1976); *Yatribi v. Industrial Commission of the State of Colorado*, 700 P2d 929 (Colo App 1985); *Duenas-Rodriguez v. Ind. Com'n.*, 199 Colo 95, 606 P2d 437 (1980); *Lepiani v. Bd. of Rev.*,

*Dept. of L. and I.,* 169 NJ Super 72, 404 A2d 318 (1979); *Bastas v. Board of Review, Department of Labor & Industry,* 155 NJ Super 312, 382 A2d 923 (1978); *Pinilla v. Board of Review, Department of Labor & Industry,* 155 NJ Super 307, 382 A2d 921 (1978); *Zapata v. Levine,* 50 AD2d 681, 375 NYS2d 424 (1975). Only Minnesota and Ohio have held that aliens without work authorization are available for work. *Flores v. Department of Jobs and Training,* 393 NW2d 231 (Minn App 1986); *Vespremi v. Giles* 22 Ohio Op 3d 102, 68 Ohio App 2d 91, 427 NE2d 30 (1980).

If the majority intends to imply that the Division may make no determination regarding legal availability at all, it would require payment of benefits to someone employed in violation of the law and encourage further violations by requiring a job search. That makes no sense. If the majority agrees that the term "available" means legal availability for work, I believe that when INS, as a matter of federal immigration and labor policy, declines to issue a work authorization, the aliens concerned are not legally available for work. For these reasons I dissent.